1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES  DISTRICT COURT

Northern District of California

Oakland Division

FRANK MORROW,

                    Plaintiff,

   v.

CITY OF OAKLAND, et al.,

                  Defendants.

_____/

No. C 11-02351 LB

**ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S**
**FIRST AMENDED COMPLAINT**

[Re: ECF Nos. 12, 17]

**INTRODUCTION**

On May 12, 2011, *pro se* plaintiff Frank Morrow sued the City of Oakland, California ("City of Oakland") and eleven individuals (the "Individual Defendants") (collectively, "Defendants") for violation of state and federal law in relation to his employment as an Oakland police officer.  *See* Original Complaint, ECF No. 1.[1]  On September 14, 2011, Mr. Morrow filed a First Amended Complaint.  First Amended Complaint ("FAC"), ECF No. 6.  On December 5, 2011, Defendants who had been served filed a motion to dismiss Mr. Morrow's First Amended Complaint.  Motion to Dismiss ("MTD"), ECF No. 12.  Two other Defendants subsequently joined the motion.  Joinder, ECF No. 17.  Upon consideration of the moving papers and applicable law and the parties' arguments at the February 2, 2012 motion hearing, the court GRANTS Defendants' motion to

_____

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

1    dismiss.

2                                    **BACKGROUND**

3         This lawsuit is the fourth in a series of related actions.  In the first lawsuit, *Castaneda v. City of*

4    *Oakland*, No. C02-05358 MHP, filed on May 16, 2001, Mr. Morrow was accused by a member of

5    the public – Ms. Castaneda – of inappropriate conduct during the course of her arrest.  Wilson

6    Declaration, Ex. A, ECF No. 13-1.  The lawsuit settled on March 31, 2004 after a settlement

7    conference with Magistrate Judge Zimmerman.  *See Castaneda v. City of Oakland*, No. C02-05358

8    MHP, ECF No. 47 ("April 1, 2004 Minute Entry").

9         In the second lawsuit, *Morrow v. City of Oakland*, No. C04-000315 MHP ("*Morrow I*"), filed on

10   February 11, 2004 (while *Castaneda* was still pending), Mr. Morrow alleged under 42 U.S.C. 1983

11   and 1985 that the City of Oakland's and numerous local officials' handling of the internal

12   investigation surrounding Ms. Castaneda's allegations violated his First Amendment right to free

13   speech, Fourth Amendment right to be free from unreasonable search and seizures, and Fourteenth

14   Amendment right to equal protection.  Wilson Declaration, Ex. B, ECF No. 13-2 ("*Morrow I*

15   Complaint").  He also brought nine state law causes of action.  *Id*.  *Morrow I* settled on April 20,

16   2004 pursuant to a written agreement.  Wilson Declaration, Ex. C, ECF No. 13-3 ("April 20, 2004

17   Settlement Agreement").  The April 20, 2004 Settlement Agreement released "defendants CITY OF

18   OAKLAND . . . and their respective agents [and] attorneys" from liability for claims arising out of

19   or related to either *Castaneda* or *Morrow I*.  *Id*. at 5.

20        In the third lawsuit, *Morrow v. City of Oakland*, No. C05-00270 MHP ("*Morrow II*"), filed on

21   January 18, 2005, Mr. Morrow alleged several additional Constitutional violations under 42 U.S.C.

22   1983, including that the City of Oakland and its attorneys denied his First Amendment right to

23   freedom of speech, his Fourteenth Amendment right to due process, and his Fourteenth Amendment

24   right to equal protection.  Wilson Declaration, Ex. D, ECF No. 13-4 ("*Morrow II* Complaint").  He

25   also alleged seven state law torts, including abuse of process, intentional infliction of emotional

26   distress, defamation, and fraud.  *Id*.  Judge Patel, who presided over *Castaneda* and *Morrow I* as

27   well, dismissed Mr. Morrow's federal claims because they were barred by res judicata and the April

28   20, 2004 Settlement Agreement, and she declined to exercise supplemental jurisdiction over his state

1    law claims.  Wilson Declaration, Ex. E, ECF No. 13-5 ("Judge Patel's Order of Dismissal").  Her

2    order was later affirmed by the Ninth Circuit Court of Appeals.  Wilson Declaration, Ex. F, ECF No.

3    13-6.

4         In the fourth lawsuit, *Morrow v. City of Oakland*, No. RG06250127 (Alameda County Sup. Ct.)

5    ("*Morrow III*"), filed in state court on January 10, 2006, Mr. Morrow alleged violations of his state

6    constitutional rights, ineffective assistance of counsel, fraud, abuse of process, and negligent and

7    intentional infliction of emotional distress.  Wilson Declaration, Ex. G, ECF No. 13-7 ("*Morrow III*

8    Complaint").  The state court dismissed all of Mr. Morrow's claims with prejudice.  Wilson

9    Declaration, Ex. H, ECF No. 13-8.  The lower court's decision was later affirmed by the California

10   Court of Appeals.  Wilson Declaration, Ex. I, ECF No. 13-9.

11        The instant action, filed on May 12, 2011, is the fifth lawsuit.  *See* Original Complaint, ECF No.

12   1.  This time, Mr. Morrow has named as defendants the City of Oakland, along with the former

13   Oakland City Attorney (John Russo), an attorney in the City Attorney's Office (Vicki Laden), three

14   former Chiefs of the Oakland Police Department (Wayne Tucker, Howard Jordan, and Anthony

15   Batts), a Deputy Chief of the Oakland Police Department (Jeffrey Israel), three Oakland Police

16   Department lieutenants (Sean Whent, Chris Shannon, and Donna Hoppenhauer), and the former

17   manager and the Principal Employee Analyst of the Oakland Equal Opportunities Program (Donald

18   Jeffries and Jo Anne Sommerville, respectively).  First Amended Complaint ("FAC"), ECF No. 6.

19   He has brought federal claims for violation of (1) his Fourteenth Amendment right to due process,

20   (2) Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*.

21   (for race discrimination, retaliation, and a hostile work environment), and (3) under 42 U.S.C. §§

22   1981 (for race discrimination), 1983 (for a pattern or practice of violating his Fourteen Amendment

23   right to due process and for failure to train and discipline in that regard), 1985 (for conspiracy to

24   violate his Fourteenth Amendment right to due process), and 1986 (for negligently failing to prevent

25   the conspiracy to violate his Fourteenth Amendment right to due process).  *Id*.  He also brought state

26   law claims for violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Govt

27   Code §§  12900-12996, and for negligent and intentional infliction of emotional distress.  *Id*.  All of

28   the claims are brought against some number of the Individual Defendants, except that the City of

1    Oakland is also named in Mr. Morrow's Title VII claim for a hostile work environment and his state

2    law claims.  *Id*.

3            At a high level, the factual allegations in Mr. Morrow's First Amended Complaint (which

4    currently is the operative complaint in this action) can be summarized as follows:

5    •       The City of Oakland's investigation of the complaint at issue in *Castaneda* was flawed and

6            the City Attorney's Office refused to help him "restore his due process rights in order to protect

7            his proprietary interest in his employment."  This "conspiracy" between the Oakland Police

8            Department, its Employee Relations Office, and City Attorney's Office decision-makers

9            "prevented [Mr. Morrow] from challenging [Ms.] Castaneda's false allegations," and

10           "compelled" him to file *Morrow I* and *Morrow II*.  *See* FAC, ECF No. 6 at 7-8, ¶¶ 25-33.

11   •       In *Morrow III*, the City Attorney's Office filed a cross-complaint against him to recover its

12           attorneys' fees and costs "to retaliate against him because of his engagement in protected

13           [activities] and his reports of corruption, fraud, waste, and abuse within [it]."  *See* FAC, ECF No.

14           6 at 9-11, ¶¶ 34-42.

15   •       In January 2004, Mr. Morrow "was compelled to take medical leave due to stress caused by

16           the City's acts of racial discrimination and retaliation."  When he was cleared to return to work

17           in January 2005, the City of Oakland, colluding with Ms. Laden, Mr. Russo, Mr. Tucker, and

18           other Oakland Police Department and City Attorney's Office officials, refused to follow his

19           doctor's recommended accommodation that Mr. Morrow not work under the supervision of any

20           individual defendants named in *Morrow I*.  Thus, Mr. Morrow went on "no pay" status and filed

21           for medical retirement.  His medical retirement request was denied in November 2005.  As a

22           result, on January 27, 2006, Mr. Morrow filed a complaint with "FEHA" and requested an

23           administrative appeal from the California Office of Administrative Hearings.  *See* FAC, ECF No.

24           6 at 12-15, ¶¶ 46-64.

25   •       Mr. Morrow filed another complaint with "FEHA" on November 24, 2006.  The complaint

26           alleged that, after Mr. Morrow returned to work on April 10, 2006, his "patrol watch

27           commander" "openly disagreed" with his doctor's recommended accommodation and

28           "repeatedly disregarded it by intentionally placing [Mr. Morrow] in the direct chain of

1    command" of named defendants in *Morrow I*, despite alternative placements being available.  On

2    April 30, 2007, "FEHA" notified him that it was filing discrimination and retaliation charges on

3    his behalf.  And on August 28, 2007, the "EEOC" also sent him a right-to-sue letter concerning

4    his November 24, 2006 "FEHA" complaint.  Fearing retaliation, however, he did not file suit.

5    *See* FAC, ECF No. 6 at 15-17, ¶¶ 65-71.

6    •    In July 2006, Mr. Israel ordered Mr. Morrow to appear in front of the Citizen's Police

7    Review Board regarding a "frivolous" citizen complaint.  After hearing from Mr. Morrow's legal

8    counsel, the Oakland Police Department rescinded the order a week later.  *See* FAC, ECF No. 6

9    at 17, ¶¶ 72-73

10   •    On May 22, 2007, a "mentally ill crack cocaine addict" made a complaint against Mr.

11   Morrow.  Thereafter, without even talking to Mr. Morrow, an unidentified "[Internal Affairs

12   Department] investigator" made an "adverse" finding against him.  Mr. Morrow then filed a

13   grievance regarding the handling of the complaint.  According to Mr. Morrow, Oakland Police

14   Department "managers" "acknowledged he was correct about violations," but nevertheless

15   refused to "advance" his grievance.  *See* FAC, ECF No. 6 at 17-18, ¶¶ 74-76.

16   •    In August 2007, in retaliation for his previous complaints and legal actions, Mr. Israel denied

17   Mr. Morrow a transfer to the Criminal Investigative Division of the Oakland Police Department,

18   despite his seeking a transfer since 2002, while a white male was transferred instead.  Thereafter,

19   in November 2007, Mr. Morrow filed a grievance with the Oakland Police Department and a

20   complaint with "EEOC" concerning the transfer.  According to Mr. Morrow, the "EEOC filed

21   retaliation charges" against the City of Oakland and believed that the "EEOC" informed the City

22   of Oakland that it would investigate his allegations.  *See* FAC, ECF No. 6 at 18-20, ¶¶ 78-88.

23   •    On January 30, 2008, the Oakland Police Department's Internal Affairs Department notified

24   Mr. Morrow that it would investigate all of his discrimination complaints.  The assigned

25   investigators (Mr. Whent, Mr. Shannon, and Ms. Hoppenhauer), however, lacked training, failed

26   to investigate the Mr. Tucker, and had conflicts of interest.  As a result, on April 25, 2008, Mr.

27   Morrow filed a grievance alleging that the investigation of his discrimination complaints was

28   itself being conducted in a racially discriminatory way.  His grievance, which his union refused

1    to advance, was denied as untimely.  Mr. Morrow alleges that the Individual Defendants and

2    their agencies failed to investigate his grievance as required and participated in a conspiracy to

3    deny his civil rights and prevent meaningful investigation of his complaints.  *See* FAC, ECF No.

4    6 at 20-28, ¶¶ 89-124.

5    •        On multiple occasions in 2009 (February 2, 2009, March 9, 2009, March 16, 2009, and

6    October 26, 2009), as a result of the failure of his April 25, 2008 grievance to be reviewed, Mr.

7    Morrow sent a "five volume complaint" regarding his treatment to the Citizen Police Review

8    Board ("CPRB"), the Oakland Police Department's Internal Affairs Department, and successive

9    Chiefs of the Oakland Police Department (Mr. Tucker, Mr. Jordan, and Mr. Batts), but four of

10   them (the CPRB, the Oakland Police Department's Internal Affairs Department, Mr. Tucker, and

11   Mr. Jordan) either stated that they would not investigate or failed to respond.  Mr. Batts,

12   however, apparently "determined" that two of Mr. Morrow's complaints were "manufactured"

13   and "unfounded."  Mr. Batts nevertheless failed to investigate Mr. Morrow's complaints, and, as

14   a result, on June 28, 2010, Mr. Morrow filed a complaint with the "EEOC."  He received a right-

15   to-sue letter from "EEOC" on February 14, 2011.  *See* FAC, ECF No. 6 at 28-32, 31-33, ¶¶ 125-

16   130, 137-143.

17   •        On July 6, 2009, Mr. Whent "expanded and manufactured false allegations in a frivolous

18   'alleged' citizen complaint against [Mr. Morrow] in order to retaliate against [him] for making

19   racial discrimination and retaliation charges against [Mr. Whent] several months prior."

20   Thereafter, on September 9, 2009, the City Attorney's Office "initiated" a complaint with the

21   Internal Affairs Department related to a claim for damages to an apartment door that was

22   damaged when Mr. Morrow and five other officers executed a search.  *See* FAC, ECF No. 6 at

23   30-31, ¶¶ 131-136.

24   On December 5, 2011, Defendants who had been served filed a motion to dismiss Mr. Morrow's

25   First Amended Complaint.  Motion to Dismiss ("MTD"), ECF No. 12.  Two other Defendants

26   subsequently joined the motion.  Joinder, ECF No. 17.[2]  Mr. Morrow opposed the motion.

27   ───────────────────

28        [2] As the court described in its January 13, 2012 order, it appears that Mr. Morrow has failed
to file adequate proofs of service for three defendants (Mr. Tucker, Mr. Batts, and Mr. Jeffries).

**UNITED STATES DISTRICT COURT**
For the Northern District of California

Opposition, ECF No. 22.[3]  The court heard oral argument from the parties on February 2, 2012.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551

---

01/13/2012 Order, ECF No. 28.  The court ordered Mr. Morrow to show cause on February 2, 2012 why these defendants should not be dismissed from the case. *Id*. at 3.

[3] Mr. Morrow actually filed two opposition briefs.  He filed the first one on December 19, 2011.  First Opposition, ECF No. 24.  However, before his First Opposition was entered into the court's Electronic File System and was known to the court, the court extended the deadline for filing his opposition to January 3, 2012.  12/23/2011 Order, ECF No. 21.  Perhaps because of this confusion, Mr. Morrow filed another opposition brief, which was largely similar to his first one, on December 23, 2011.  Opposition, ECF No. 22.  In any case, because the opposition briefs are so similar, the court will treat Mr. Morrow's second-filed brief as his opposition brief for purposes of this order.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In

2   addition, courts may consider documents attached to the complaint.  *Parks School of Business, Inc.*

3   *v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).  If the court dismisses the

4   complaint, it should grant leave to amend even if no request to amend is made "unless it determines

5   that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

6   F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California*

7   *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

8                                              **DISCUSSION**

9   **I.  Mr. Morrow's Federal Claims**

10        A.  Claims Precluded by *Castaneda* and Subsequent Litigation

11        As Judge Patel explained in her order granting the defendants' motion to dismiss in *Morrow II*,

12   "[t]he doctrine of res judicata, or claim preclusion, prohibits litigation in a subsequent action of any

13   claims that were raised or could have been raised in a prior action."  Judge Patel's Order of

14   Dismissal at 4 (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

15   With respect to Mr. Morrow's two prior federal actions – *Morrow I* and *Morrow II* – "[u]nder Ninth

16   Circuit law, an adjudication in a prior action serves as a bar to litigation of a claim if the prior

17   adjudication (1) involved the same claim as the later suit, (2) reached a final judgment on the merits

18   and (3) involved the same parties or their privies."  *Id.* (citing *Blonder-Tongue Labs. v. University of*

19   *Ill. Found.*, 402 U.S. 313, 323, 324 (1971); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

20   713 (9th Cir. 2001)).[4]

21        As summarized above, Mr. Morrow alleges in his First Amended Complaint that the City of

22

23   _____

24        [4] "In determining whether two claims are identical, the Ninth Circuit employs four criteria:
     namely, (1) whether the rights or interests established in the prior judgment would be destroyed or

25   impaired by prosecution of the second action; (2) whether substantially the same evidence is
     presented in the two actions; (3) whether the two suits involve infringement of the same right and (4)

26   whether the two suits arise out of the same 'transaction.'"   Wilson Declaration, Ex. E, ECF No. 13-
     5 at 4 (citing *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993); *Constantini v. Trans.*

27   *World Airlines*, 681 F.2d 1199, 1201-02  (9th Cir. 1982), *cert. denied*, 459 U.S. 1087 (1982)).  "The
     fourth criterion – whether the two suits arise out of the same transaction – is the most important."

28   *Id.* (citing *Constantini*, 681 F.2d at 1202).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Oakland's investigation of the complaint at issue in *Castaneda* was flawed and the subsequent

2   "conspiracy" between the Oakland Police Department, Employee Relations Office, and City

3   Attorney's Office decision-makers "prevented [Mr. Morrow] from challenging [Ms.] Castaneda's

4   false allegations," and "compelled" him to file *Morrow I* and *Morrow II*.  *See* FAC, ECF No. 6 at 7-

5   8, ¶¶ 25-33.  Judge Patel, however, already ruled that Mr. Morrow's federal claims arising out of the

6   City of Oakland's defense of Mr. Morrow in *Castaneda* and its handling of the related internal

7   investigation of Mr. Morrow – claims Mr. Morrow brought in *Morrow I* and *Morrow II* – are barred

8   by res judicata.  Judge Patel's Order of Dismissal at 5-6.  She so concluded because (1) the February

9   8, 2005 judgment in *Morrow I* (which was based on the April 20, 2005 Settlement Agreement) was a

10  final judgment on the merits, (2) the same parties (Mr. Morrow and the City of Oakland) were

11  involved[5], and (3) both of the alleged wrongs – the same wrongs alleged here – flowed from the City

12  of Oakland's handling of the previous complaint and subsequent litigation and thus arose from the

13  same transactions at issue there.  *Id.*  For the same reasons, to the extent that Mr. Morrow's claims in

14  this action that are based on allegations related to the City of Oakland's investigation of the

15  complaint at issue in *Castaneda* and the subsequent *Morrow I* and *Morrow II* actions, they are

16  barred by the doctrine of res judicata.

17      With respect to Mr. Morrow's prior state action – *Morrow III* – under the United States

18  Constitution's Full Faith and Credit Clause and 28 U.S.C. § 1738, "a federal court must give to a

19  state-court judgment the same preclusive effect as would be given that judgment under the law of the

20  State in which the judgment was rendered."  *Migra v. Warren City School Dist. Bd. of Educ.*, 465

21  U.S. 75, 81 (1984).  Accordingly, a court should apply California law concerning claim preclusion to

22  a California judgment.  *See id.*; *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (applying

23  Nevada law to determine preclusive effect of a Nevada state court judgment).  And under California

24  law, for res judicata to bar a subsequent action, "three requirements have to be met: (1) the second

25

26  _____

27      [5] Judge Patel also noted that it was irrelevant that the other defendants named in *Morrow II* were not parties to *Castaneda* or *Morrow I* because those defendants were seeking to preclude Mr.

28  Morrow's claims, and the relevant inquiry was whether <u>Mr. Morrow</u> was bound by *Morrow I*.  Judge Patel's Order of Dismissal at 5.

C 11-02351 LB

1  lawsuit must involve the same 'cause of action' as the first one[6], (2) there must have been a final

2  judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a

3  party, or in privity with a party, to that first lawsuit." *San Diego Police Officers' Ass'n v. San Diego*

4  *City Emps.' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (summarizing California law).

5      In *Morrow III*, Mr. Morrow brought state law claims against numerous defendants, including the

6  City of Oakland, based the City of Oakland's defense of Mr. Morrow in *Castaneda* and its handling

7  of the related internal investigation of Mr. Morrow.  *Morrow III* Complaint at 6-18, ¶¶ 13-63; *id*. at

8  18-26, ¶¶ 66-92.  In addition, Mr. Morrow alleged that he was "undergoing treatment for work

9  related stress" due to certain Morrow II (and Morrow III) defendants' actions, that the City of

10 Oakland "has taken [him] off of the payroll, and [that] despite [his] willingness to return to work

11 with a reasonable accommodation as recommended by his own, and the [City of Oakland's]

12 physician, [the City of Oakland] has refused to provide the accommodation," causing injury.  *Id*. at

13 18, ¶¶ 64-65.

14     Defendants here argue that Mr. Morrow's claims that are based on conduct before January 10,

15 2006 (the date Mr. Morrow filed *Morrow III*) are barred by res judicata.  The court agrees.

16 _____

17     [6] To determine whether prior proceedings involve the same claim or cause of action as the
    current one, "California has consistently applied the 'primary rights' theory, under which the
18  invasion of one primary right gives rise to a single cause of action." *Kay v. City of Rancho Palos
    Verdes*, 504 F.3d 803, 809 (9th Cir. 2007).  The Ninth Circuit has explained that under this theory,
19

20      a cause of action is comprised of a primary right of the plaintiff, a corresponding
        primary duty of the defendant, and a wrongful act by the defendant constituting a
21      breach of that duty. The most salient characteristic of a primary right is that it is
        indivisible: the violation of a primary right gives rise to but a single cause of action . .
22      . . As far as its content is concerned, the primary right is simply the plaintiff's right to
        be free from the particular injury suffered.
23

24 *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004) (quoting *Mycogen Corp. v. Monsanto Co.*,
   28 Cal.4th 888, 904 (2002)).  In other words, "if two actions involve the same injury to the plaintiff
25 and the same wrong by the defendant then the same primary right is at stake even if in the second
   suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new
26 facts supporting recovery." *San Diego Police Officers' Ass'n*, 568 F.3d at 734 (quoting *Eichman v.
   Fotomat Corp.*, 147 Cal.App.3d 1170 (1983)); *see also Gamble v. General Foods, Corp.*, 229
27 Cal.App.3d 893, 898 (1991) ("[T]wo actions constitute a single cause of action if they both affect
   the same primary right.").
28

1    Because the primary right Mr. Morrow sought to enforce in Morrow III – the single primary right

2    "to be free of invidious employment discrimination," *see Acuna v. Regents of Univ. of Cal.*, 56

3    Cal.App.4th 639, 649 (1997) – is the same primary right that he seeks to enforce here, to the extent

4    that his claims accrued prior to January 10, 2006, they are barred by the doctrine of res judicata.

5        B.  Title VII

6        Mr. Morrow alleges violations of Title VII of the Civil Rights Act of 1964 in his first and ninth

7    causes of action.

8        In his first cause of action, Mr. Morrow alleges that the Individual Defendants – but not the City

9    of Oakland – engaged in employment discrimination and retaliation in violation of Title VII.  *See*

10   FAC, ECF No. 6 at 39-41, ¶¶ 160-70.  Defendants argue that Mr. Morrow's Title VII discrimination

11   and retaliation claims should be dismissed because the Individual Defendants cannot be held

12   individually liable under Title VII.  Motion, ECF No. 12 at 17.  They correctly point out that under

13   Title VII, only an "employer" may be held liable for discrimination against an employee.  *Id.*; *see* 42

14   U.S.C. § 2000e-3(a).  In turn, the term "employer", as used in Title VII, means "a person engaged in

15   an industry affecting commerce who has fifteen or more employees . . . and any agent of such a

16   person . . . ."  42 U.S.C. § 2000e(b).

17       Mr. Morrow alleges that at all material times he was "employed by the City of Oakland as an

18   Oakland Police Officer,"  FAC, ECF No. 6 at 3, ¶ 6, and in their moving papers, Defendants concede

19   as much, Motion, ECF No. 12 at 17 ("The only potential defendant in a Title VII claim is the City of

20   Oakland.").  While some courts have held that supervisors and other agents are employers within the

21   meaning of Title VII, *see, e.g., Hamilton v. Rodgers,* 791 F.2d 439, 442-43 (5th Cir. 1986), *limited*

22   *by*, *Harvey v. Blake,* 913 F.2d 226, 227-28 (5th Cir. 1990), the Ninth Circuit has held that

23   "individual defendants cannot be held liable for damages under Title VII," *Miller v. Maxwell's*

24   *Intern. Inc.,* 991 F.2d 583, 587 (9th Cir. 1993).  Mr. Morrow does not allege anywhere that any of

25   the Individual Defendants are or were his "employer" for purposes of Title VII, and, based on the

26   record before it, the court does not have any reason to so conclude.  Accordingly, Mr. Morrow's first

27   cause of action against the Individual Defendants for violation of Title VII must be dismissed with

28   prejudice.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

In his ninth cause of action, Mr. Morrow alleges that Defendants – all of them, including the City of Oakland – created a hostile work environment in violation of Title VII.  *See* FAC, ECF No. 6 at 57-58, ¶¶ 236-42.  As noted above, the Individual Defendants are not proper defendants to a Title VII claim.  *Miller,* 991 F.2d at 587.  Accordingly, Mr. Morrow's ninth cause of action against them must be dismissed with prejudice.

This leaves only the City of Oakland as a defendant to Mr. Morrow's ninth cause of action.  Mr. Morrow's hostile work environment claim is based on the City of Oakland's "receiving and failing to investigate [his] discrimination and retaliation complaints."  *See* FAC, ECF No. 6 at 57, ¶ 236. His complaining, he alleges, "was a primary factor in [the City of Oakland's] numerous adverse actions directed against him[,] including the non-investigation of his EEO complaints."  *Id*. at 58, ¶ 240.

As an initial matter, Mr. Morrow's First Amended Complaint mentions three complaints filed with the "EEOC" – presumably the United States Equal Employment and Opportunity Commission – and two right-to-sue notices he received from it.  He never filed suit within 90 days of receiving the first right-to-sue notice on August 28, 2007, but he did file suit after receiving the second right-to-sue notice dated February 14, 2011.[7]  With respect to the second right-to-sue notice (which is attached to the First Amended Complaint), Mr. Morrow alleges that it relates to a complaint he filed with the EEOC on June 28, 2010 concerning his "five volume complaint" about Defendants' failure

---

[7] Mr. Morrow alleges that he received a right-to-sue notice from the EEOC on August 28, 2007.  FAC, ECF No. 6 at 16, ¶ 67.  This notice, which is not attached to Mr. Morrow's First Amended Complaint, apparently relates to a complaint Mr. Morrow filed with "FEHA" on November 24, 2006.  *Id*.  Mr. Morrow never specifically alleges that he filed the complaint with the EEOC, but instead alleges that he received the EEOC's right-to-sue notice "concerning his dually filed November 24, 2006 FEHA discrimination and retaliation complaint."  *Id*. at 16, ¶ 70.

Mr. Morrow also alleges that he filed a complaint with the EEOC on November 27, 2007 concerning his denied transfer to the Criminal Investigative Division for discriminatory reasons.  *Id*. at 19-20, ¶ 85. Apparently, the EEOC "filed retaliation charges" against the City of Oakland, and Mr. Morrow "believes and alleges" that the EEOC informed the City of Oakland that it would investigate plaintiff's charges.  *Id*. at 20, ¶ 86, 88.  Mr. Morrow did not allege the outcome of this investigation, nor does he allege that he received a right-to-sue notice from EEOC.

to investigate his numerous discrimination complaints.  *See* FAC, ECF No. 6 at 33, ¶¶ 142, 143.

Defendants challenge Mr. Morrow's claim in two ways.  First, they argue that claims accruing before September 1, 2009 are barred as untimely because under 42 U.S.C. § 2000e-5(e)(1), a California employee must file a charge with the EEOC within 300 days of the alleged unlawful employment practice in order to preserve the claim for a subsequent civil action.  Motion, ECF No. 12 at 18.  Second, they argue that the conduct alleged to have occurred on September 1, 2009 and after does not constitute a "hostile work environment" because Mr. Morrow did not allege "that there was any verbal or physical conduct which would alter the terms and conditions of employment or which would cause a physical or verbally abusive work environment."  *Id.*

The United States Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), is instructive with respect to both of Defendants' arguments.  In that case, the plaintiff employee brought Title VII race discrimination claims for disparate treatment, retaliation, and hostile work environment against the defendant employer, alleging that he was repeatedly denied training opportunities, subjected to unwarranted disciplinary action, and unlawfully discharged.  *Id*. at 104-106.  While some of the allegedly discriminatory acts occurred within 300 days of the time he filed his charge with the EEOC, many took place prior to that date.  *Id*. at 106.  The district court granted summary judgment against the plaintiff's claims arising from acts that occurred outside the limitations period, concluding that "'[b]ecause [the plaintiff] believed that he was being discriminated against at the time that all of these acts occurred, it would not be unreasonable to expect that [he] should have filed an EEOC charge on these acts before the limitations period on these claims ran.'"  *Id*.  Relying on the continuing violation doctrine, which "allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice," the Ninth Circuit reversed the district court and held that a plaintiff may sue on claims that would ordinarily be time barred so long as they either are "sufficiently related" to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations period.  *Id*. at 105, 106-07 (internal quotation marks and citation omitted).

The Supreme Court reversed in part and affirmed in part.  In so doing, the Court distinguished

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   between "discrete" discriminatory or retaliatory acts and acts that contribute to a hostile work

2   environment.  To the extent that the Ninth Circuit held that "so long as one act falls within the

3   charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to

4   that act may also be considered for the purposes of liability" – so-called "serial violations" –  the

5   Court reversed.  *Id*. at 114.  Rather,

6   . . . discrete discriminatory acts are not actionable if time barred, even when they are
related to acts alleged in timely filed charges.  Each discrete discriminatory act starts
7   a new clock for filing charges alleging that act.  The charge, therefore, must be filed
within the . . . 300-day time period after the discrete discriminatory act occurred.  The
8   existence of past acts and the employee's prior knowledge of their occurrence,
however, does not bar employees from filing charges about related discrete acts so
9   long as the acts are independently discriminatory and charges addressing those acts
are themselves timely filed.  Nor does the statute bar an employee from using the
10   prior acts as background evidence in support of a timely claim.

11   *Id*. at 113.  Applying those principles, the Court then concluded:

12   Discrete acts such as termination, failure to promote, denial of transfer, or refusal to
hire are easy to identify.  Each incident of discrimination and each retaliatory adverse
13   employment decision constitutes a separate actionable "unlawful employment
practice."  [The plaintiff] can only file a charge to cover discrete acts that "occurred"
14   within the appropriate time period.  While [the plaintiff] alleged that he suffered from
numerous discriminatory and retaliatory acts from the date that he was hired through
15   March 3, 1995, the date that he was fired, only incidents that took place within the
timely filing period are actionable.  Because [the plaintiff] first filed his charge with
16   an appropriate state agency, only those acts that occurred 300 days before February
27, 1995, the day that [the plaintiff] filed his charge, are actionable.

17

18   *Id*. at 114 (footnote omitted).

19   "Hostile environment claims," on the other hand, "are different in kind from discrete acts.  Their

20   very nature involves repeated conduct."  *Id*. at 115 (citation omitted)  "The 'unlawful employment

21   practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or

22   perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be

23   actionable on its own.  Such claims are based on the cumulative effect of individual acts."  *Id*.

24   (internal citation omitted).  Thus,

25   [t]o assess whether a court may, for the purposes of determining liability, review all
such conduct, including those acts that occur outside the filing period, we again look
26   to the statute.  It provides that a charge must be filed within . . . 300 days "after the
alleged unlawful employment practice occurred."  A hostile work environment claim
27   is composed of a series of separate acts that collectively constitute one "unlawful
employment practice."  42 U.S.C. § 2000e-5(e)(1).  The timely filing provision only
28   requires that a Title VII plaintiff file a charge within a certain number of days after
the unlawful practice happened.  It does not matter, for purposes of the statute, that

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3

some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

4   *Id*. at 116-17 (footnote omitted).  The plaintiff in that case presented evidence showing that his

5   managers made racial jokes, performed racially derogatory acts, made negative comments about the

6   capacity of African-Americans to hold supervisory roles, and used various racial epithets.  *Id*. at 120.

7   On that evidence, the Court could not say that the alleged acts "are not part of the same actionable

8   hostile claim, and so it affirmed the Ninth Circuit's conclusion that the defendant's pre-limitations

9   period acts were not time barred for purposes of the plaintiff's hostile work environment claim.  *Id*.

10   at 120 (citation omitted).

11         With this in mind, when considering a Title VII claim for a hostile work environment, "[a]

12   court's task is to determine whether the acts about which an employee complains are part of the

13   same actionable hostile work environment practice, and if so, whether any act falls within the

14   statutory time period."  *Id*.  To make this determination, and to see what, if any, of the City of

15   Oakland's alleged conduct is actionable, the court must decide whether Mr. Morrow has sufficiently

16   pled a racially hostile work environment claim.

17         To establish a *prima facie* hostile work environment claim under either Title VII, Mr. Morrow

18   must raise a triable issue of fact as to whether (1) he was "subjected to verbal or physical conduct"

19   because of his race, (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe

20   or pervasive to alter the conditions of [his] employment and create an abusive work environment."

21   *Manatt v. Bank of Am.*, 339 F.3d 792, 799 (9th Cir. 2003) (quoting *Kang v. U. Lim Am., Inc.*,296

22   F.3d 810, 817 (9th Cir. 2002)).  Mr. Morrow also must show that his "'workplace [was] permeated

23   with discriminatory intimidation'" such that his "'working environment [could] both subjectively

24   and objectively be perceived as abusive.'"  *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.

25   2000) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)), and *Fuller v. City of*

26   *Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)).  In evaluating the objective portion of the inquiry, the

27   court should utilize a "totality of the circumstances" test, which includes factors such as: (1) the

28   frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether

1    the conduct is physically threatening and publicly humiliating or merely an offensive utterance; and

2    (4) whether the conduct unreasonably interferes with the employee's work performance.  *Little v.*

3    *Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002); *Brooks*, 229 F.3d at 923–24.  The

4    less severe or serious the nature of the harassing conduct, the more pervasive or frequent such

5    conduct must be.  *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991).  In evaluating the factors

6    relating to the objective prong of the inquiry, the court should adopt the perspective of the

7    reasonable victim.  *Brooks*, 229 F.3d at 924 (citing *Ellison*, 924 F.2d at 879).

8         Defendants contend that, despite his ninth cause of action labeled as one for a hostile work

9    environment, Mr. Morrow nevertheless has alleged only discrete acts of discriminatory or retaliatory

10   conduct.  The court agrees.  As summarized above, the acts alleged by Mr. Morrow are better

11   described as specific events that occurred as certain times rather than general repeated conduct

12   which is actionable for its cumulative effect.  For example, Mr. Morrow alleges that after he

13   returned to work on April 10, 2006, his "patrol watch commander" "openly disagreed" with his

14   doctor's recommend accommodation and "repeatedly disregarded it by intentionally placing [him] in

15   the direct chain of command" of named defendants in *Morrow I*, despite alternative placements

16   being available.  He also alleges that in May 2007, Defendants refused to "advance" his grievance

17   concerning an Internal Affairs Department investigator's "adverse" finding against him with respect

18   to a complaint made by a "mentally ill crack cocaine addict."  He further alleges that in August

19   2007, in retaliation for his previous complaints and legal actions, Mr. Morrow was denied a transfer

20   to the Criminal Investigative Division, despite his seeking a transfer since 2002.  In addition, he

21   alleges that in 2009 Defendants failed to investigate his "five volume complaint" concerning his

22   treatment, despite Mr. Batts having "determined" that two of his complaints were "manufactured"

23   and "unfounded."  He also alleges that on September 9, 2009, the City Attorney's Office "initiated"

24   a complaint with the Oakland Police Department's Internal Affairs Department related to a claim for

25   damages to an apartment door that was damaged when Mr. Morrow and five other officers executed

26   a search.

27        These are not the type of general, demeaning acts that "cannot be said to occur on any particular

28   day" and which "occur[] over a series of days or perhaps years" but "may not be actionable on

[their] own." *See Morgan*, 536 U.S. at 115; *id.* at 114 ("Discrete acts such as . . . denial of transfer . . . are easy to identify").  Indeed, when compared to the acts alleged as part of the *Morgan* plaintiff's hostile work environment claim (*e.g.*, his managers made racial jokes, performed racially derogatory acts, made negative comments about the capacity of African-Americans to hold supervisory roles, and used various racial epithets), it is clear that the acts alleged by Mr. Morrow, under the standards articulated by the Ninth Circuit, are not the type of frequent, unwelcome verbal or physical acts that alter the conditions of his employment and create an abusive work environment that are often found to create a hostile work environment.  *See Manatt v. Bank of Am.*, 339 F.3d at 799.  As the Supreme Court implied in *Morgan*, that a plaintiff can allege to have suffered from numerous, discrete discriminatory and retaliatory acts over a length of time does not mean that those acts necessarily can be combined to create a hostile work environment claim.  *See Morgan*, 536 U.S. at 114.

In sum, then, Mr. Morrow has failed to sufficiently allege a claim for a racially hostile work environment under Title VII.  His ninth cause of action, as alleged against the City of Oakland, must be dismissed.

C.  42 U.S.C. § 1981

In his first cause of action, Mr. Morrow alleges that the Individual Defendants violated 42 U.S.C. § 1981 by acting "in a racially discriminatory and retaliatory manner toward [him]."  *See* FAC, ECF No. 6 at 39-41, ¶¶ 160-70.

"Section 1981 of the Civil Rights Act of 1866 provides that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens.'"  *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1005-08 (9th Cir. 2011) (quoting 42 U.S.C. § 1981(a)).  A § 1981 claim is sufficient to withstand a motion to dismiss if it alleges that plaintiff suffered discrimination in employment on the basis of race.  *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986).

It is well-established that analysis of a § 1981 employment discrimination claim under follows the same legal principles as those applicable in a Title VII discrimination case.  *See Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir.2007) (setting forth § 1981 discrimination requirements).  To establish his initial *prima facie* case of race discrimination, Mr. Morrow must show that: (1) he is a

UNITED STATES DISTRICT COURT
For the Northern District of California

member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See*, *e.g.*, *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 847 9th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "As to the third element, an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)). And "[t]o make out a *prima facie* case of retaliation, [a plaintiff] must establish that he undertook a protected activity . . . , his employer subjected him to an adverse employment action, and there is a causal link between those two events." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (citation omitted). Finally, with respect to either a race discrimination or retaliation claim, "a plaintiff must prove that the defendant acted against him with discriminatory intent." *Stones v. Los Angeles Cmty. College Dist.*, 796 F.2d 270, 272 (9th Cir. 1986) (citing *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination")).

In addition, claims under 42 U.S.C. § 1981 alleging a hostile work environment, wrongful termination, or discrimination in the terms and conditions of employment are subject to a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371–72, 383–84 (2004); *see Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1005-08 (9th Cir. 2011). Because Mr. Morrow filed his original complaint on May 12, 2011, Original Complaint, ECF No. 1, only claims accruing after May 12, 2007 may be actionable.

As summarized above, Mr. Morrow alleges a host of wrongs that occurred after that date. He alleges that in May 2007, Defendants refused to "advance" his grievance concerning an Internal Affairs Department investigator's "adverse" finding against him with respect to a complaint made by a "mentally ill crack cocaine addict." He further alleges that in August 2007, in retaliation for his previous complaints and legal actions, he was denied a transfer to the Criminal Investigative Division, despite his seeking a transfer since 2002. In addition, he alleges that in 2009 Defendants

1    failed to investigate his "five volume complaint" concerning his treatment, despite Mr. Batts having

2    "determined" that two of his complaints were "manufactured" and "unfounded."  He also alleges

3    that on September 9, 2009, the City Attorney's Office "initiated" a complaint with the Oakland

4    Police Department's Internal Affairs Department related to a claim for damages to an apartment

5    door that was damaged when Mr. Morrow and five other officers executed a search.

6        Mr. Morrow fails to sufficiently allege his claim.  For example, with respect to the May 2007

7    "adverse" finding by the Internal Affairs Department investigator and to the August 2007 transfer

8    denial, Mr. Morrow never alleges how or why this "adverse" finding or the transfer denial was an

9    adverse employment action – that is, how ir why they materially affected the compensation, terms,

10   conditions, or privileges of his employment.  *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th

11   Cir. 2008); *see also Lee v. Potter*, No. C 07-254 SBA, 2008 WL 4449568, at *9 (N.D. Cal. Oct. 1,

12   2008), *aff'd*, 358 F.Appx. 966 (9th Cir. 2009) ("As the terms and conditions of plaintiff's

13   employment did not objectively change for the worse as a result of her lateral transfer or defendant's

14   denial of her requests, it was not an adverse employment action as a matter of law.") (citing *Tran v.

15   Trustees of State Colleges in Col.*, 355 F.3d 1263, 1268 (10th Cir. 2004) (transfer without reduction

16   in pay or benefits that requires employee to develop new skills is not adverse employment action);

17   *Kortan v. Cal. Youth Authority*, 217 F.3d 1104, 1112 (9th Cir. 2000) (reassignment of job duties,

18   falsely accusing employee of not submitting work order, ridiculing of employee to co-workers, and

19   unfairly negative performance review are insufficient to establish adverse employment action);

20   *Nidds v. Schindler Elevator*, 103 F.3d 854, 860 n.3 (9th Cir. 1996) (transfer to different work site

21   with no reduction in pay not an adverse job action)).  Nor does Mr. Morrow allege facts to show that

22   the refusal to advance his grievance against the Internal Affairs Department investigator's "adverse"

23   finding was an act of intentional discrimination or was in retaliation for his engaging in protected

24   activity.  *See Stones*, 796 F.2d at 272  *Vasquez*, 349 F.3d at 646.  With respect to the failure of

25   certain Defendants to investigate and respond to his April 25, 2008 grievance alleging that the

26   investigation of his discrimination complaints itself was being conducted in a racially discriminatory

27   way or to his complaints made in his "five volume complaint," Mr. Morrow never alleges facts to

28   show how or why the failure to investigate his grievances constitutes an "adverse employment

UNITED STATES DISTRICT COURT
For the Northern District of California

1   action."  Indeed, case law suggests that the failure to investigate employment grievances may not be

2   one.  *See Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000) ("The lack of a

3   response does not amount to an adverse employment action.  The record shows that Davis officials

4   investigated Dr. Chuang's complaint and took unspecified disciplinary actions.  While the

5   university's failure to inform Dr. Chuang of its findings or resulting disciplinary actions was

6   certainly irritating and perhaps unjustified, it did not materially affect the compensation, terms,

7   conditions, or privileges of the Chuangs' employment.  Nor did the Chuangs present evidence

8   showing that non-Asian or non-Chinese complainants have received formal responses in similar

9   circumstances.").  Nor does Mr. Morrow allege facts to suggest that certain Defendants'

10  investigation of citizen complaints – such as the City Attorney's Office "initiation" investigation of a

11  citizen complaint regarding an apartment door that allegedly was damaged when Mr. Morrow and

12  five other officers executed a search – constitutes an "adverse employment action" that materially

13  affected the compensation, terms, conditions, or privileges of his employment.  *See Davis*, 520 F.3d

14  at 1089.

15      In sum, Mr. Morrow's allegations of discrimination and retaliation do not meet the *prima facie*

16  pleading requirements.  Accordingly, his first cause of action for violation of 42 U.S.C. § 1981 must

17  be dismissed.

18      D.  Fourteenth Amendment Due Process

19      In his second cause of action, Mr. Morrow alleges that ten of the Individual Defendants – all of

20  whom are local officials – violated his Fourteenth Amendment "due process rights to receive a

21  policy[-]compliant investigation of his EEO complaints" and "to have his grievances about the

22  [Internal Affairs Department] investigations heard before an impartial body."  *See* FAC, ECF No. 6

23  at 41-43, ¶¶ 171-80.

24      As Judge Illston explained:

25      "[T]he Fourteenth Amendment is not self-enforcing.  Rather, § 5 of the Fourteenth
        Amendment grants Congress the power to enact legislation with the purpose of
26      enforcing the Fourteenth Amendment.  *City of Boerne v. Flores*, 521 U.S. 507,
        518–519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  In order to bring a claim for race
27      discrimination in violation of the Fourteenth Amendment, plaintiff must bring a claim
        under 42 U.S.C. § 1983.  Section 1983 allows one to bring suit against a person or
28      entity acting under color of state law for violation of her constitutional rights.  Simply
        alleging a violation of her Fourteenth Amendment rights is insufficient."

1

2   *Johnson v. Sutter Delta Medical Center*, No. C 11–03628 SI, 2011 WL 5444319, at *3 (N.D. Cal.

3   Nov. 9, 2011). Mr. Morrow did not bring his Fourteenth Amendment claim under § 1983, and it

4   fails for that reason.

5       Even if he had, though, the guarantee of due process under the Fourteenth Amendment applies

6   only when a constitutionally protected liberty or property interest is at stake. *Ingraham v. Wright*,

7   430 U.S. 651, 672 (1977); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Erickson v. United*

8   *States*, 67 F.3d 858, 861 (9th Cir. 1995). "To establish a substantive due process claim, a plaintiff

9   must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v.*

10  *City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998). Similarly, "[t]o establish a violation of

11  procedural due process[,] a plaintiff must demonstrate: (1) a deprivation of a constitutionally

12  protected liberty or property interest, and (2) a denial of adequate procedural protections."

13  *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006).[8]

14

15  _____

16      [8] As Judge Henderson explained in further detail:

17      A liberty interest protected by the Fourteenth Amendment may arise from two
        sources — the Due Process Clause of the Constitution itself and the laws of the
18      States. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). It is clear that a specific
        constitutional right to an internal affairs investigation does not exist. However, a
19      state statute or regulation may also create a liberty interest protected by the
        Constitution. *Id*. at 1909; *Board of Pardons v. Allen*, 107 S.Ct. 2415 (1987); *Olim v.*
20      *Wakinekona*, 461 U.S. 238, 249 (1983). Establishing a procedural structure for
        making decisions does not by itself create an interest protected by the Due Process
21      Clause. *Olim*, 461 U.S. at 249; *Hewitt*, 459 U.S. at 471; *Baumann v. Arizona Dept. of*
        *Corrections*, 754 F.2d 841, 845 (9th Cir. 1985). A state statute or regulation creates a
22      liberty interest entitled to protection under the Fourteenth Amendment only when it
        imposes substantive limitations on official discretion. *Olim*, 461 U.S. at 249; *Hewitt*,
23      459 U.S. at 472; *Mendoza v. Blodgett*, 960 F.2d 1425 (9th Cir. 1992); *McFarland v.*
24      *Cassady*, 779 F.2d 1426, 1428 (9th Cir. 1986). To establish a protected liberty
        interest in a benefit created by state law, plaintiff must show that he has a legitimate
25      claim of entitlement to it, based upon defined and objective criteria which require a
        particular action and which leave no room for discretion to deny the requested relief.
26      *Roberts v. Spaulding*, 783 F.2d 867, 870–71 (9th Cir. 1986).

27

28  *Garrison v. McQueeney*, No. C 94–3595 TEH, 1995 WL 39435, at *2 (N.D. Cal. Jan. 27, 1995).

**United States District Court**
For the Northern District of California

1   Case law suggests that Mr. Morrow's alleged liberty interest – "to receive a policy[-]compliant

2   investigation of his EEO complaints" and "to have his grievances about the [Oakland Police

3   Department's Internal Affairs Department] investigations heard before an impartial body" – does not

4   exist under the Fourteenth Amendment. *See Wolff v. Town of Mount Pleasant*, No. 06 Civ.

5   3864(CS)(LMS), 2009 WL 1468691, at *6 (S.D.N.Y. Apr. 27, 2009), *report and recommendation*

6   *adopted in part*, 2009 WL 1468620 (S.D.N.Y. May 26, 2009) ("Government entities, however, do

7   not have affirmative constitutional responsibilities to investigate charges and complaints brought to

8   them for consideration.") (citing *Bernstein v.. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008)

9   (observing that the due process clause of the Fourteenth Amendment does not impose an affirmative

10  duty on governments to conduct investigations); *Garrison v. McQueeney*, No. C 94–3595 TEH,

11  1995 WL 39435, at *3 (N.D. Cal. Jan. 27, 1995) ("California Penal Code § 832.5 provides that a

12  procedure to investigate complaints against personnel must be established by every agency which

13  employs peace officers and that a written description of the procedure must be made available to the

14  public.  However, this section does not establish a uniform manner in which citizen's complaints are

15  investigated; that task is left to the individual agency.  Plaintiff has not alleged that the investigatory

16  procedure followed by the Marin County Sheriff's Department mandated that his three witnesses be

17  interviewed.  Absent such a mandate, the investigation of plaintiff's complaint did not have to

18  include the interviews.") (internal citation omitted).  Indeed, even the non-existence of, or the failure

19  of prison officials to properly implement, an administrative appeals process within the prison system

20  does not raise constitutional concerns. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

21  Accordingly, Mr. Morrow's second cause of action for violation of his Fourteenth Amendment

22  due process right must be dismissed.

23  E.  1983

24  In his third, fourth, and fifth causes of action, Mr. Morrow alleges violations of 42 U.S.C. § 1983

25  by certain Individual Defendants.  Section 1983 imposes liability upon any person who, acting under

26  color of state law, deprives another of a federally protected right.  42 U.S.C. § 1983.  "To make out a

27  cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of

28  state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v.*

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *United States*, 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied*, 479 U.S. 1054 (1987).

2         The statute of limitations for § 1983 claims is the forum state's statute of limitations for personal

3    injury actions. *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 672–73 (9th Cir. 1991). California

4    has a two-year statute of limitations for personal injury actions that arise on or after January 1, 2003.

5    Cal. Code Civ. P. § 335.1. Mr. Morrow filed his original complaint on May 12, 2011. Original

6    Complaint, ECF No. 1. Thus, under the applicable two-year statute of limitations, only claims

7    accruing after May 12, 2009 may be actionable.[9]

8         As described above, the only acts occurring after that date that Mr. Morrow alleges are the

9    initiation and reopening of an Internal Affairs investigation concerning a citizen's complaint that a

10   search warrant was illegally executed and Mr. Batts's failure to investigate the numerous complaints

11   made in Mr. Morrow's "five volume complaint." *See* FAC, ECF No. 6 at 30-31, ¶ 131-136; *id.* at

12   31-33, ¶¶ 137-143. Throughout these paragraphs in his First Amended Complaint, Mr. Morrow

13   contends that these actions violated Oakland Police Department policies, the City of Oakland's equal

14   employment, anti-discrimination, and non-harassment policy, and a negotiated settlement agreement

15   to which the City of Oakland is a party. *See id.* at 30, ¶ 130; *id.* at 32-33, ¶ 141.

16        To make out a cause of action under § 1983, however Mr. Morrow must plead a deprivation of

17   rights "secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334,

18   1338 (9th Cir.1986). Administrative policies and settlement agreements, even if they did secure

19   rights, do not suffice. *See Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) ("To

20   the extent that the violation of a state law amounts to the deprivation of a state-created interest that

21   reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.")

22   (quoting *Lovell v. Poway Unified School District*, 90 F.3d 367, 370 (9th Cir. 1996)); *Green v.*

23   *McKaskle*, 788 F.2d 1116, 1122-23 (5th Cir. 1986) ("Remedial decrees do not create or enlarge

24   constitutional rights" and are not "sufficient to serve as a basis for liability under § 1983."); *see also*

---

26        [9] Mr. Morrow argues in his opposition that the "continuing violations" doctrine allows
27   certain acts occurring prior to the two-year statute of limitations also to be actionable under § 1983.
     The United States Supreme Court made clear, though, that this doctrine only applies for § 1983
28   claims based on hostile work environment. *Morgan*, 536 U.S. at 114; *see Carpinteria Valley Farms,*
     *Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003).

C 11-02351 LB

23

1   *Klein v. Zavaras*, 80 F.3d 432, 435 (10th Cir. 1996); *DeGidio v. Pung*, 920 F.2d 525 (8th Cir.

2   1990).[10]

3        Because Mr. Morrow fails to sufficiently plead a § 1983 claim, his third, fourth, and fifth causes

4   of action must be dismissed.

5        F.  1985

6        In his sixth cause of action, Mr. Morrow alleges that ten of the Individual Defendants violated 42

7   U.S.C. § 1985.  This statute proscribes conspiracies to interfere with certain civil rights.  As

8   explained above, however, Mr. Morrow has not sufficiently pled any civil rights violations.  Even if

9   he had, he has not alleged facts to support the allegation that any of the Individual Defendants

10  conspired together.  "A claim under this section must allege facts to support the allegation that

11  defendants conspired together.  A mere allegation of conspiracy without factual specificity is

12  insufficient."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (citing

13  *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984); *Burnett v. Short*, 441 F.2d 405, 406 (5th Cir.

14  1971)).  Mr. Morrow's sixth cause of action, therefore, must be dismissed.

15       G.  1986

16       In his seventh cause of action, Mr. Morrow's alleges that ten of the Individual Defendants

17  violated 42 U.S.C. § 1986.  "Section 1986 imposes liability on every person who knows of an

18  impending violation of section 1985 but neglects or refuses to prevent the violation.  A claim can be

19  stated under section 1986 only if the complaint contains a valid claim under section 1985."

20  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (citing *Trerice v. Pedersen*, 769 F.2d

21  1398, 1403 (9th Cir. 1985)).  As explained above, Mr. Morrow failed to sufficiently allege a claim

22

23       [10] To be sure, Mr. Morrow does, within his third, fourth, and fifth causes of action, allege that
     certain Individual Defendants' acts "demonstrated a pattern and practice of violating the due process
24   rights of [Mr. Morrow] and other [Oakland Police Department] employees," "demonstrated a pattern
     and practice of violating [Mr. Morrow's] and other [Oakland Police Department] employees'
25   [Fourteenth] Amendment rights by failing to ensure the training of his subordinates responsible for
     the investigation of [Mr. Morrow's] and other employee[s'] civil rights complaints," and
26   "demonstrated a pattern and practice of violating [Mr. Morrow's] federally protected rights under
     Title VII to be free of subjection to discrimination and retaliation in the workplace."  *See* FAC, ECF
27   No. 6 at 43-50, ¶¶ 181-204.  But as explained above with respect to his first cause of action, Mr.
     Morrow has not sufficiently alleged a violation of a protectable "liberty interest."
28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   under § 1985.  Mr. Morrow's seventh cause of action, therefore, must be dismissed.

2   **II.  Mr. Morrow's State Law Claims**

3         A.  Fair Employment and Housing Act

4         Mr. Morrow generally alleges violations of California's Fair Employment and Housing Act,

5   Cal. Govt Code 12900-12996, against Defendants in his first, eighth, and ninth causes of action.  *See*

6   FAC, ECF No. 6 at 39-40, ¶¶ 160-70; *id*. at 55-57, ¶¶ 225-35; *id*. at 57-58, ¶¶ 236-42.

7         "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute

8   by filing a complaint with [California's] Department of Fair Employment and Housing [("DFEH")]

9   and must obtain from [the DFEH] a notice of right to sue in order to be entitled to file a civil action

10  in court based on violations of the FEHA.  *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492

11  (1996) (citing Cal. Gov't Code §§ 12960, 12965(b); *Martin v. Lockheed Missiles & Space Co.*, 29

12  Cal.App.4th 1718, 1724 (1994); *Rojo v. Kliger*, 52 Cal.3d 65, 88 (1990)).  "The timely filing of an

13  administrative complaint is a prerequisite to the bringing of a civil action for damages under the

14  FEHA."  *Id*. (citing *Accardi v. Superior Court*, 17 Cal.App.4th 341, 349 (1993); *Denny v. Universal*

15  *City Studios, Inc.*, 10 Cal.App.4th 1226, 1232 (1992)).

16        Nowhere in his First Amended Complaint does Mr. Morrow allege that he received a right-to-sue

17  notice from the DFEH.  *See generally*, FAC, ECF No. 6.  Mr. Morrow does allege that he received

18  multiple right-to-sue notices from the EEOC, but "[a]n EEOC right-to-sue letter does not satisfy the

19  jurisdictional requirement of exhaustion of remedies as to FEHA claims."  *Alberti v. City & County*

20  *of San Francisco Sheriff's Dept.*, 32 F.Supp.2d 1164, 1174 (N.D. Cal. 1998 (*citing Martin v.*

21  *Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1724 (1994)).  Because a court cannot waive

22  the jurisdictional requirement that plaintiffs first file a complaint with the DFEH before bringing a

23  civil suit under the FEHA, Mr. Morrow's FEHA claims in his first, eighth, and ninth causes of

24  action must be dismissed.

25        B.  Intentional and Negligent Infliction of Emotional Distress

26        Mr. Morrow alleges claims for intentional and negligent infliction of emotional distress against

27  Defendants in his tenth and eleventh causes of action, respectively.  *See* FAC, ECF No. 6 at 59, ¶¶

28  243-46; *id*. at 59-60, ¶¶ 247-48.  His state law tort claims seeking damages against government

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   entities or government employees acting in the scope of their employment, however, are barred

2   unless Mr. Morrow timely presented his claims to the City of Oakland and Oakland Police

3   Department before filing the instant action. *See* Cal. Gov't Code §§ 905, 912.4, 945.4, 950.2;

4   *Ortega v. O'Connor*, 764 F.2d 703, 707 (9th Cir. 1985), *rev'd on other grounds*, 480 U.S. 709

5   (1987) (failure to comply with claim-filing requirements imposed by California Torts Claims Act

6   bars pendent state claims); *Neal v. Gatlin*, 35 Cal.App.3d 871, 877-78 (1973) (where public

7   employee was acting within employee's express or implied authority, notwithstanding wrongful

8   nature of the act, complaint based on such act was properly dismissed for failure to allege filing of

9   claim with employing public entity).

10      Mr. Morrow fails to allege facts demonstrating or excusing compliance with this claim

11   presentation requirement. Nowhere in his First Amended Complaint does he allege that he

12   presented his negligent and/or intentional infliction of emotional distress claims to any government

13   entity. For this reason, his tenth and eleventh causes of action must be dismissed.

### V. CONCLUSION

15      Based on the foregoing, Defendants' motion to dismiss Mr. Morrow's First Amended Complaint

16   is GRANTED. The following causes of action are DISMISSED WITH PREJUDICE:

17   1. Mr. Morrow's first and ninth causes of action against the Individual Defendants; and

18   2. Mr. Morrow's first through eleventh causes of action to the extent they are based on conduct

19      occurring before January 10, 2006.

20   The remainder of Mr. Morrow's claims – including his first and ninth causes of action against the

21   City of Oakland and his first through ninth causes of action to the extent they are based on conduct

22   occurring on January 10, 2006 or after – are DISMISSED WITHOUT PREJUDICE.

23      Mr. Morrow may file a Second Amended Complaint within 14 days from the date of this order.

24   This disposes of ECF No. 12.

25      **IT IS SO ORDERED.**

26   Dated: February 3, 2012

27   _____
     LAUREL BEELER
     United States Magistrate Judge

28