UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| FRANK MORROW, | No. C 11-02351 LB |
| Plaintiff, | **ORDER (1) DENYING PLAINTIFF'S MOTION TO STAY CASE AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |
| _____/ | [Re: ECF Nos. 39, 46] |

**INTRODUCTION**

On May 12, 2011, *pro se* plaintiff Frank Morrow sued the City of Oakland, California ("City of Oakland") and numerous individuals (the "Individual Defendants") (collectively, "Defendants") for violations of state and federal law in relation to his employment as an Oakland police officer. *See* Original Complaint, ECF No. 1.[1]  The court dismissed his First Amended Complaint on February 3, 2012, and Mr. Morrow filed a Second Amended Complaint on February 17, 2012.  Second Amended Complaint ("SAC"), ECF No. 38; *see* First Amended Complaint ("FAC"), ECF No. 6; 2/3/2012 Order, ECF No. 35.  On March 8, 2012, Defendants filed a motion to dismiss Mr. Morrow's Second Amended Complaint.  Motion to Dismiss SAC, ECF No. 39.  Plaintiff then filed a motion to stay the case.  Motion to Stay, ECF No. 46.  Upon consideration of the moving papers and applicable law,

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

and the parties' arguments at the June 7, 2012 motion hearing, the court DENIES Plaintiff's motion to stay and GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## BACKGROUND

As the court described in its order dismissing Mr. Morrow's First Amended Complaint, this lawsuit is the fourth in a series of related actions. In the first lawsuit, *Castaneda v. City of Oakland*, No. C02-05358 MHP, which was filed in state court on May 16, 2001 and removed to federal court on November 8, 2011, Mr. Morrow was accused by a member of the public – Ms. Castaneda – of inappropriate conduct during the course of her arrest. Wilson Declaration, Ex. A, ECF No. 13-1. The lawsuit settled on March 31, 2004 after a settlement conference with Magistrate Judge Zimmerman. *See Castaneda v. City of Oakland*, No. C02-05358 MHP, ECF No. 47 ("April 1, 2004 Minute Entry").

In the second lawsuit, *Morrow v. City of Oakland*, No. C04-000315 MHP ("*Morrow I*"), filed on February 11, 2004 (while *Castaneda* was still pending), Mr. Morrow alleged under 42 U.S.C. §§ 1983 and 1985 that the City of Oakland's and numerous local officials' handling of the internal investigation surrounding Ms. Castaneda's allegations violated his First Amendment right to free speech, Fourth Amendment right to be free from unreasonable search and seizures, and Fourteenth Amendment right to equal protection. Wilson Declaration, Ex. B, ECF No. 13-2 ("*Morrow I* Complaint"). He also brought nine state law causes of action. *Id. Morrow I* settled on April 20, 2004 pursuant to a written agreement. Wilson Declaration, Ex. C, ECF No. 13-3 ("April 20, 2004 Settlement Agreement"). The April 20, 2004 Settlement Agreement released "defendants CITY OF OAKLAND . . . and their respective agents [and] attorneys" from liability for claims arising out of or related to either *Castaneda* or *Morrow I*. *Id.* at 5.

In the third lawsuit, *Morrow v. City of Oakland*, No. C05-00270 MHP ("*Morrow II*"), filed on January 18, 2005, Mr. Morrow alleged several additional Constitutional violations under 42 U.S.C. § 1983, including that the City of Oakland and its attorneys denied his First Amendment right to freedom of speech, his Fourteenth Amendment right to due process, and his Fourteenth Amendment right to equal protection. Wilson Declaration, Ex. D, ECF No. 13-4 ("*Morrow II* Complaint"). He also alleged seven state law torts, including abuse of process, intentional infliction of emotional

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  distress, defamation, and fraud. *Id.* Judge Patel, who presided over *Castaneda* and *Morrow I* as

2  well, dismissed Mr. Morrow's federal claims because they were barred by *res judicata* and the April

3  20, 2004 Settlement Agreement, and she declined to exercise supplemental jurisdiction over his state

4  law claims. Wilson Declaration, Ex. E, ECF No. 13-5 ("Judge Patel's Order of Dismissal"). Her

5  order was later affirmed by the Ninth Circuit Court of Appeals. *See Morrow v. City of Oakland*,

6  200 Fed. Appx. 644, 645-46, 2006 WL 2472190, at *1 (9th Cir. 2006).

7        In the fourth lawsuit, *Morrow v. City of Oakland*, No. RG06250127 (Alameda County Sup. Ct.)

8  ("*Morrow III*"), filed in state court on January 10, 2006, Mr. Morrow alleged violations of his state

9  constitutional rights, ineffective assistance of counsel, fraud, abuse of process, defamation, and

10  negligent and intentional infliction of emotional distress. Wilson Declaration, Ex. G, ECF No. 13-7

11  ("*Morrow III* Complaint"). The state court dismissed all of Mr. Morrow's claims with prejudice.

12  Wilson Declaration, Ex. H, ECF No. 13-8 ("Superior Court Order Sustaining Demurrer").

13  The lower court's decision was later affirmed by the California Court of Appeals. *Morrow v. City of*

14  *Oakland*, 2007 WL 2677288, at *4 (Cal. Ct. App. 1st Dist. 2007).

15        The instant action, filed on May 12, 2011, is the fifth lawsuit. *See* Original Complaint, ECF No.

16  1. This time, Mr. Morrow named as defendants the City of Oakland, along with the former Oakland

17  City Attorney (John Russo), an attorney in the City Attorney's Office (Vicki Laden), three former

18  Chiefs of the Oakland Police Department (Wayne Tucker, Howard Jordan, and Anthony Batts), a

19  Deputy Chief of the Oakland Police Department (Jeffrey Israel), three Oakland Police Department

20  lieutenants (Sean Whent, Chris Shannon, and Donna Hoppenhauer), and the former manager and the

21  Principal Employee Analyst of the Oakland Equal Opportunities Program (Donald Jeffries and Jo

22  Anne Sommerville, respectively). SAC, ECF No. 38 at 3-5, ¶¶ 8-18.[2] He has brought federal claims

23  _____

24        [2] Although Mr. Morrow did not list Ms. Hoppenhauer in the list of parties near the beginning
      of his Second Amended Complaint, he does describe her as a defendant in another part of it. *See*
25      SAC, ECF No. 38 at 35, ¶ 178. Also, it appears that Mr. Morrow failed to properly serve Mr.
      Tucker, Mr. Jeffries, and Mr. Batts with the Second Amended Complaint. He served Mr. Tucker
26      and Mr. Jeffries with the First Amended Complaint after Defendants' counsel filed its motion to
      dismiss the First Amended Complaint (so counsel did not appear or move to dismiss on their behalf),
27      and the court dismissed the First Amended Complaint before the deadline for Mr. Tucker and Mr.
      Jeffries to respond to it. *See* Motion to Dismiss FAC, ECF No. 12; Response to Order to Show
28      Cause, ECF No. 31; Order Dismissing FAC, ECF No. 35. So, Mr. Morrow needed to serve Mr.
      Tucker and Mr. Jeffries with the Second Amended Complaint, and serving Defendants' counsel via

1    for violations of 42 U.S.C. § 1981 (for retaliation and a hostile work environment) and his

2    Fourteenth Amendment right to due process.  *Id.* at 35-38, ¶¶ 176-86.  He also brought state law

3    claims for violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Govt Code

4    §§ 12900-12996 (for harassment, failure to prevent discrimination, and retaliation) and of California

5    Labor Code § 1102.5 (for retaliation).  *Id.* at 38-40, ¶¶ 187-94.

6        At a high level, the factual allegations in Mr. Morrow's Second Amended Complaint[3] can be

7    summarized as follows:

8    •    The City of Oakland's investigation of the complaint at issue in *Castaneda* was flawed, and

9        its result – a finding that her allegations were "not sustained" – "unnecessarily impugned guilt

10       upon [Mr. Morrow] and lent credibility to her false allegation[s]."  In addition, the City

11       "conspired" with others "to prevent [Mr. Morrow] from exercising his contractual, as well as

12       state and federally protected rights to receive an impartial administrative due process name[-]

13       clearing hearing."  *See* SAC, ECF No. 38 at 5-10, ¶¶ 23-50.

14   •    Judge Patel forced Mr. Morrow to settle *Morrow I* and illegally used her position to coerce

15       the City into approving the settlement.  *See id.* at 10-17, ¶¶ 51-90.

16   •    In *Morrow III*, the City Attorney's Office, in violation of the Ninth Circuit's order upholding

17       Judge Patel's order dismissing *Morrow II*, sought to recover its attorneys' fees and costs to

18       retaliate against him because of his engagement in protected activities and his reports of

19       corruption, fraud, waste, and abuse.  *See id.* at 21-22, ¶¶ 107-110.

20   •    After returning to work after a medical leave due to stress caused by the City's acts of racial

21       discrimination and retaliation, the City did not provide him with a reasonable accommodation in

22

23   ECF did not accomplish this (as it did for the Defendants who moved to dismiss the First Amended
     Complaint).  As for Mr. Batts, the court previously quashed service of the First Amended Complaint

24   on him, and Mr. Morrow has yet to file a proof of service demonstrating that he has been served
     with any iteration of the complaint.  *See* Response to Order to Show Cause, ECF No. 31.  Thus, Mr.

25   Tucker, Mr. Jeffries, and Mr. Batts are not Defendants to this action.  In any event, because the court

26   dismisses with prejudice all claims against the Individual Defendants (with the exception of the
     Section 1981 claim against Mr. Israel), the service issues regarding Mr. Tucker, Mr. Jeffries, and

27   Mr. Batts are now moot.

28       [3] On February 3, 2012, the court previously granted Defendants' motion to dismiss Mr.
     Morrow's First Amended Complaint.  2/3/2012 Order, ECF No. 35.  Mr. Morrow was given leave to
     file a Second Amended Complaint, which he did on February 17, 2012.  SAC, ECF No. 38.

C 11-02351 LB
ORDER                                        4

retaliation for his previous complaints and placed him under the supervision of defendants from his previous lawsuits. On January 27, 2006, Mr. Morrow filed a complaint with "FEHA" "alleging [that the] [C]ity was retaliating against him by not participating in the interactive process due to [his] engagement[] in protected EEO participation. *See id.* at 18-21, ¶¶ 91-106.

• The City failed to honor its commitments under the April 20, 2004 Settlement Agreement by, among other things, failing "to provide [him] with the $5,000.00 payment [he] was entitled to receive" under the Agreement. *See id.* at 22-23, ¶¶ 111-15.

• Mr. Morrow filed another complaint with "FEHA" on November 24, 2006. The complaint "concern[ed] Captain Ben Fairow's deliberate disregard of [Mr. Morrow's] physician's recommended accommodation" and repeated placement of Mr. Morrow "under the direct supervision of" named defendants in *Morrow I*, despite alternative placements being available. On April 30, 2007, "FEHA" notified him that it was filing a charge on his behalf. *See id.* at 23-24, ¶¶ 116-20.

• In August 2007, in retaliation for his previous complaints and legal actions, Mr. Israel denied Mr. Morrow a transfer to the Criminal Investigative Division of the Oakland Police Department, despite his seeking a transfer since 2002, while a white male was transferred instead. Thereafter, in November 2007, Mr. Morrow filed a grievance with the Oakland Police Department and a complaint with "EEOC" concerning the transfer. According to Mr. Morrow, the "EEOC filed discrimination and retaliation charges" against the City. *See id.* at 24-26, ¶¶ 121-31.

• On January 30, 2008, the Oakland Police Department's Internal Affairs Department notified Mr. Morrow that it would investigate all of his discrimination complaints. The assigned investigators (Mr. Whent, Mr. Shannon, and Ms. Hoppenhauer), however, lacked training and failed to properly investigate the complaints, and had conflicts of interest. As a result, on April 25, 2008, Mr. Morrow filed a grievance alleging that the investigation of his discrimination complaints was itself being conducted in a racially discriminatory way. His grievance was denied as untimely. Mr. Morrow alleges that Defendants failed to investigate his grievance as required, failed to participate in mediation to resolve the complaints, and participated in a conspiracy to deny his civil rights and prevent meaningful investigation of his complaints. *See id.* at 26-31, ¶¶ 132-56.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    •    On multiple occasions in 2009 (February 2, 2009, March 9, 2009, March 16, 2009, and

2    October 26, 2009), as a result of the failure of his April 25, 2008 grievance to be reviewed, Mr.

3    Morrow sent a "five volume complaint" regarding his treatment to the Citizen Police Review

4    Board ("CPRB"), the Oakland Police Department's Internal Affairs Department, and successive

5    Chiefs of the Oakland Police Department (Mr. Tucker, Mr. Jordan, and Mr. Batts), but four of

6    them (the CPRB, the Oakland Police Department's Internal Affairs Department, Mr. Tucker, and

7    Mr. Jordan) either stated that they would not investigate or failed to respond.  Mr. Batts,

8    however, apparently "determined" that two of Mr. Morrow's complaints were "manufactured"

9    and "unfounded."  Mr. Batts failed to investigate Mr. Morrow's complaints, and, as a result, on

10   June 28, 2010, Mr. Morrow filed a complaint with the "EEOC."  He received a right-to-sue letter

11   from "EEOC" on February 14, 2011.  *See id.* at 31-35, ¶¶ 157-62, 168-173.

12   •    On July 6, 2009, Mr. Whent "expanded and manufactured false allegations in a frivolous

13   'alleged' citizen complaint against [Mr. Morrow] in order to retaliate against [him] for making

14   racial discrimination and retaliation charges against [Mr. Whent] several months prior."

15   Thereafter, on September 9, 2009, the City Attorney's Office "initiated" a complaint with the

16   Internal Affairs Department related to a claim for damages to an apartment door that was

17   damaged when Mr. Morrow and five other officers executed a search.  *See id.* at 32-33, ¶¶ 163-

18   67.

19   •    "On February 8, 2012, the California Fair Employment and Housing Administration issued

20   [Mr. Morrow] a Right to Sue Notice for [the] City's failure to take all reasonable steps necessary

21   to prevent discrimination and [C]ity's maintenance of a continuing hostile work environment."

22   *Id.* at 35, ¶ 175.

23        On March 8, 2012, Defendants moved to dismiss the Second Amended Complaint.  Motion to

24   Dismiss ("MTD") SAC, ECF No. 39.  Mr. Morrow did not timely oppose the motion.  *See* Notice of

25   Non-Receipt of Opposition, ECF No. 44; *see also* N.D. Cal. Civ. L.R. 7-3(a).  Instead, on April 18,

26   2012, Mr. Morrow filed a motion to stay the case.  Motion to Stay, ECF No. 46.  Defendants filed an

27   opposition to Mr. Morrow's motion two days later on April 20, 2012.  Opposition to Stay, ECF No.

28   50.  Then, on April 26, 2012, Mr. Morrow filed an untimely opposition to Defendants' motion to

     dismiss.  Plaintiff's Opposition, ECF No. 52.  The court nevertheless accepted his opposition, and

1   ordered Defendants to file any reply by May 14, 2012. 4/27/2012 Order, ECF No. 51. Defendants

2   did so. Defendants' Reply, ECF No. 55. The court heard oral argument from the parties on both

3   motions on June 7, 2012. Minute Entry, ECF No. 59.

**LEGAL STANDARD**

5       Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that

6   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a

7   defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic*

8   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

9       A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

10  not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S.

11  at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

12  to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

13  *Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability

14  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

15  (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to

16  dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

17  his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

18  the elements of a cause of action will not do. Factual allegations must be enough to raise a right to

19  relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals

20  omitted).

21       In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

22  and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551

23  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In

24  addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc.*

25  *v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). If the court dismisses the

26  complaint, it should grant leave to amend even if no request to amend is made "unless it determines

27  that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

28  F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California*

*Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    deficiencies, the court may order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963 F.2d

2    1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed

3    *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**DISCUSSION**

5    A.  Mr. Morrow's Motion to Stay and His Claims That Are Precluded by *Castaneda* and Subsequent

6    Litigation

7         In its previous order, the court ruled that, to the extent that Mr. Morrow's claims in this action

8    are based on allegations related to the City of Oakland's investigation of the complaint at issue in

9    *Castaneda* and the subsequent *Morrow I* and *Morrow II* actions in federal court and the *Morrow III*

10   action in state court, they are barred by the doctrine of res judicata.  Accordingly, the court

11   dismissed Mr. Morrow's claims to the extent they accrued prior to January 10, 2006 (the date Mr.

12   Morrow filed *Morrow III*).  *See* 2/3/2012 Order, ECF No. 35 at 8-11.

13        In his motion to stay, Mr. Morrow argues that the district court lacked subject-matter jurisdiction

14   in *Morrow I* and *Morrow II*.  Motion to Stay, ECF No. 47.  Thus, Mr. Morrow argues that neither

15   *Morrow I* or *Morrow II* (or *Morrow III*, which relied upon *Morrow I* and *Morrow II*) should

16   preclude Mr. Morrow's claims based on pre-January 10, 2006 conduct.  *See id*.

17        His motion fails for the following reasons.  First, this court already dismissed with prejudice his

18   claims based on pre-January 10, 2006 conduct.  2/3/2012 Order, ECF No. 35 at 8-11.  Second, to the

19   extent that he asks the court to reconsider its decision in that regard, he failed to comply with the

20   court's local rules.  *See* N.D. Cal. Civ. L.R. 7-9 (setting forth procedures and standards for

21   reconsideration).

22        Third, even if the court did allow Mr. Morrow to file a motion for reconsideration, his argument

23   is not persuasive.  He states that no court has looked at the *Morrow I* and *Morrow II* court's subject-

24   matter jurisdiction and the preclusive effect of those cases, but that simply is not correct.  Judge

25   Patel addressed it, the Ninth Circuit addressed it, the Alameda County Superior Court addressed it,

26   and the California Court of Appeals addressed it.  *See* Judge Patel's Order of Dismissal, ECF No.

27   13-5 at 4-8; *Morrow v. City of Oakland*, 200 Fed. Appx. 644, 2006 WL 2472190 (9th Cir. 2006);

28   Superior Court Order Sustaining Demurrer at 2-3; *Morrow v. City of Oakland*, 2007 WL 2677288, at

*4-5 (Cal. Ct. App. 1st Dist. 2007).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

These courts all found the April 20, 2004 Settlement Agreement to be enforceable and gave *Morrow I* and *Morrow II* preclusive effect. Despite Mr. Morrow's contention that they completely avoided the issues or only tersely denied his arguments, *see* Motion to Stay, ECF No. 47 at 21, the courts provided ample discussion. In *Morrow I*, after Mr. Morrow challenged it, Judge Patel upheld the validity of the April 20, 2012 Settlement Agreement and stated that "[n]o further legal claims from plaintiff against defendants will be entertained by this court, and plaintiff is advised that the settlement agreement and release that he negotiated stand on solid legal ground." Judge Patel's Order of Dismissal, ECF No. 13-5 at 3 (quoting Memorandum & Order, ECF No. 82, *Morrow I* (Feb. 8, 2005)). In *Morrow II*, Judge Patel found that res judicata barred Mr. Morrow's claims and enforced the April 20, 2004 Settlement Agreement. Judge Patel's Order of Dismissal, ECF No. 13-5 at 4-8. Mr. Morrow appealed her rulings to the Ninth Circuit, and the appellate panel rejected his arguments regarding the district court's subject-matter jurisdiction and the enforceability of the April 20, 2004 Settlement Agreement. *See Morrow v. City of Oakland*, 200 Fed. Appx. 644, 645-46, 2006 WL 2472190, at *1. It explained:

> The district court properly enforced the March 31, 2004 settlement agreement between Castaneda and Morrow and the City ('the Castaneda settlement') because Morrow, assisted by counsel of his own choosing, acknowledged and accepted the key terms of the agreement before the settlement judge. *See Doi*[ *v. Halekulani Corp.*], 276 F.3d [1131,] 1137-39 [(9th Cir. 2002)]. For the same reasons, the district court properly enforced the April 20, 2004 settlement agreement between Morrow and the City. There is no support in the plain language of either settlement for Morrow's contention that the Castaneda settlement had to be approved by the Oakland City Council within a certain amount of time. *See* Cal. Civ. Code § 1657 ("If no time is specified for the performance of an act required to be performed, a reasonable time is allowed.").
>
> The district court properly concluded that the federal claims in Morrow's second action against the City were precluded by both res judicata and the contractual obligations imposed by the settlement of his first action. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077-83 (9th Cir. 2003) (applying elements of res judicata); *Int'l Union of Operating Eng'rs. v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (applying res judicata to dismissal pursuant to settlement).
>
> The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Morrow's state-law claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction"); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (describing factors district court should consider in declining supplemental jurisdiction).
>
> Morrow's remaining contentions lack merit.

1  *Id.*

2  The Alameda County Superior Court also discussed the preclusive effect of *Morrow I* and

3  *Morrow II*.  It explained:

> All of Plaintiff's claims related to conduct occurring prior to April 20, 2004 are
> barred by the judgment of the federal court in Plaintiff's first civil lawsuit, No. C 04-
> 0315 MHP (Morrow I).  That judgment was based on the validity of the settlement
> agreement dated April 20, 2004, in which Plaintiff agreed to refrain from any further
> litigation against the City of Oakland and its attorneys on claims related to the
> Morrow I lawsuit and the civil lawsuit filed against Plaintiff by Griselvia Castaneda,
> No. C 02-5358 (Castaneda).  The allegations in this action of conduct prior to April
> 20, 2004 are clearly encompassed by the settlement agreement.  The judgment
> affirming the settlement agreement creates a res judicata effect as to all claims against
> the City Defendants related to those two prior lawsuits, including all of Plaintiff's
> allegations in this action that concern conduct prior to April 20, 2004.  A judgment
> rendered by a federal court has res judicata and collateral estoppel effect despite a
> pending appeal.
>
> Any challenge to the settlement agreement and the judgment in Morrow I is
> barred by the collateral estoppel effect of the judgment in Plaintiff's second civil
> lawsuit, No. C 05-0270 (Morrow II).  Despite the fact that the federal court declined
> to rule on Plaintiff's state law claims, the ruling upholding the settlement agreement,
> along with the Morrow I judgment, have the effect of precluding Plaintiff's claims in
> this action relating to conduct before April 20, 2004.

*Id.* at 2-3.  The superior court's decision was upheld on appeal.  *Morrow v. City of Oakland*, 2007

WL 2677288, at *4-5 (Cal. Ct. App. 1st Dist. 2007).  After recounting the procedural history of Mr.

Morrow's cases and the previous trial- and appellate-level rulings that had been made, the California

Court of Appeals explained:

> In sustaining demurrers to Morrow's complaint and amended complaint, the trial
> court concluded that the causes of action were barred by (1) the collateral estoppel
> effect of the judgments in *Morrow I* and *Morrow II*, where allegations of misconduct
> in the *Castaneda* case had also been made; (2) the terms of the *Morrow I* settlement
> agreement, which released the City and Burnham Brown attorneys from liability
> arising from the *Castaneda* litigation; and (3) the litigation privilege that shielded all
> defendants from liability for statements made during the *Castaneda* litigation.
>
> On appeal, Morrow argues that *Morrow I* and *Morrow II* are not entitled to
> collateral estoppel effect because the district court did not have subject matter
> jurisdiction when it rendered judgment.  It is true that a judgment entered without
> fundamental, subject matter jurisdiction may be collaterally attacked as void and will
> not be given collateral estoppel effect. (*Pacific Mut. Life Ins. Co. v. McConnell*
> (1955) 44 Cal.2d 715, 725-726.) But the *Morrow I* and *Morrow II* judgments are
> valid.
>
> Morrow himself invoked the jurisdiction of the federal court by asserting federal
> causes of action for violation of civil rights, and by filing *Morrow II* in federal court.
> (28 U.S.C. § 1331.)  Morrow claims that the district court lost jurisdiction when it
> questioned the soundness of his federal claims.  Morrow notes that the district court,
> to encourage settlement when a motion to dismiss was pending in *Morrow I*, advised
> Morrow that his complaint did not state viable federal claims.  Morrow misinterprets

these comments as a determination that subject matter jurisdiction was absent.  In fact, the comments show that the district court was exercising jurisdiction over the federal claims and was warning Morrow that it was inclined to rule against him on the merits of those claims.  Unless and until the federal claims were dismissed, and pendent jurisdiction over the state claims declined, the federal court retained jurisdiction over Morrow's cases.

Morrow's other attacks on the *Morrow I* and *Morrow II* judgments are equally unavailing.  His argument that the district court acted arbitrarily, with bias, and denied Morrow a full hearing on his claims provides no grounds for disregarding the judgments.  Morrow has had an opportunity to make these claims to the Ninth Circuit and the United States Supreme Court, which rejected them.  The judgments are final and may not be reexamined.  Any alleged improprieties in the district court proceedings are irrelevant at this point.  "'An erroneous judgment is as conclusive as a correct one.'" (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975.)

The final judgments were entitled to collateral estoppel effect.  Morrow is mistaken in arguing that a prior judgment arrived at by stipulation, like *Morrow I*, is not preclusive.  "[A] stipulated judgment may properly be given collateral estoppel effect, at least when the parties manifest an intent to be collaterally bound by its terms." (*California State Auto. Assn. Inter-Ins. v. Superior Court* (1990) 50 Cal.3d 658, 664.)  The settlement agreement in *Morrow I* expressly states Morrow's intent to release the City defendants from "all claims, demands, accounts, actions, causes of action, obligations, proceedings, losses, liabilities, and sums of money of every kind and character whatsoever . . . including . . . all claims . . . which are in any way related to" the *Castaneda* lawsuit.

Morrow's final argument against the trial court's use of collateral estoppel rests on the claim that the court precluded issues that were not identical to those decided in the prior federal cases.  Morrow notes that the current superior court action, *Morrow III*, alleges misconduct beyond April 20, 2004, and those acts were not the subject of prior litigation.  Morrow misunderstands the trial court's order.  The trial court held that "[a]ll of Plaintiff's claims relating to conduct occurring prior to April 20, 2004 [when *Morrow I* was settled] are barred by the judgment of the federal court" in *Morrow I*.  The trial court held that Morrow's claims relating to conduct occurring after April 20, 2004, are barred on other legal grounds, including the litigation privilege.  (Civ. Code, § 47, subd. (b)(2).)

*Id.*

In sum, Mr. Morrow has had ample opportunity to make his arguments during the course of his several cases, and the rulings above show that he did so.  In light of these rulings, and despite his efforts, Mr. Morrow cannot collaterally attack these rulings now.  *Ins. Co. of Ireland v. Compagnie des Bauxites de Guinia*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment.  It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal.") (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); *Stoll v. Gottlieb*, 305 U.S. 165 (1938)).

Accordingly, Mr. Morrow's motion to stay is DENIED, and, as the court ruled in its 2/3/2012

1   Order, his claims that accrued prior to January 10, 2006 are barred by the doctrine of res judicata.

2   B.  Mr. Morrow's Federal Claims

3       1.  42 U.S.C. § 1981

4       In his First Amended Complaint, Mr. Morrow brought claims under Section 1981 and Title VII

5   for discrimination and retaliation (both claims were included in his first cause of action).  *See* FAC,

6   ECF No. 6 at 39-41, ¶¶ 160-70.  Mr. Morrow brought the claims against the Individual Defendants,

7   and the court dismissed the Title VII claim with prejudice because, in the Ninth Circuit, individuals

8   cannot be held liable for damages under Title VII.  2/3/2012 Order, ECF No. 35 at 11 (citing *Miller*

9   *v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587 (9th Cir. 1993)).  The court also dismissed Mr.

10  Morrow's Section 1981 claim because his allegations were insufficient.  *Id*. at 17-20.

11      In his Second Amended Complaint, Mr. Morrow brings a claim under Section 1981 – but not one

12  under Title VII – for discrimination and retaliation, and it appears he brings it against only the

13  Individual Defendants.  *See* SAC, ECF No. 38 at 35-36, ¶¶ 176-78.[4]

14      "Section 1981 of the Civil Rights Act of 1866 provides that '[a]ll persons within the jurisdiction

15  of the United States shall have the same right in every State and Territory to make and enforce

16  contracts . . . as is enjoyed by white citizens.'"  *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000,

17  1005-08 (9th Cir. 2011) (quoting 42 U.S.C. § 1981(a)).  A Section 1981 claim is sufficient to

18  withstand a motion to dismiss if it alleges that the plaintiff suffered discrimination in employment on

19  the basis of race.  *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986).

20      In addition, claims under 42 U.S.C. § 1981 alleging a hostile work environment, wrongful

21  termination, or discrimination in the terms and conditions of employment are subject to a four-year

22  statute of limitations.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371–72, 383–84 (2004);

23  *see Johnson*, 653 F.3d at 1005-08.  Because Mr. Morrow filed his original complaint on May 12,

24  2011, Original Complaint, ECF No. 1, only claims accruing after May 12, 2007 may be actionable.

25

26          [4] Had he brought a Section 1981 claims against the City, it would have failed.  The Ninth
    Circuit has held that a plaintiff pursuing a claim against a municipality under Section 1981 must
27  allege that his or her injury was caused by an official "policy or custom," as required under *Monell*
    *v. Department of Social Services*, 436 U.S. 658 (1978).  *Fed. of African American Contractors v.*
28  *City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996).  This is because a municipality is not subject to
    Section 1981 liability under a theory of respondeat superior.  *Id*.  Mr. Morrow has not made any
    allegations regarding any official policy of custom.

UNITED STATES DISTRICT COURT
For the Northern District of California

i.  Race Discrimination and Retaliation

It is well-established that analysis of a Section 1981 employment discrimination claim follows the same legal principles as those applicable in a Title VII discrimination case.  *See Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007).  To establish his initial *prima facie* case of race discrimination, Mr. Morrow must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  "As to the third element, an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'"  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)).  And "[t]o make out a *prima facie* case of retaliation, [a plaintiff] must establish that he undertook a protected activity . . . , his employer subjected him to an adverse employment action, and there is a causal link between those two events."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (citation omitted).  Finally, with respect to either a race discrimination or retaliation claim, "a plaintiff must prove that the defendant acted against him with discriminatory intent."  *Stones v. Los Angeles Cmty. College Dist.*, 796 F.2d 270, 272 (9th Cir. 1986) (citing *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination")).

As mentioned above, Mr. Morrow brought a Section 1981 claim for race discrimination and retaliation in his First Amended Complaint.  The court found his allegations to be insufficient and dismissed his claim without prejudice.  The court explained:

> As summarized above, Mr. Morrow alleges a host of wrongs that occurred after [May 12, 2007].  He alleges that in May 2007, Defendants refused to "advance" his grievance concerning an Internal Affairs Department investigator's "adverse" finding against him with respect to a complaint made by a "mentally ill crack cocaine addict." He further alleges that in August 2007, in retaliation for his previous complaints and legal actions, he was denied a transfer to the Criminal Investigative Division, despite his seeking a transfer since 2002.  In addition, he alleges that in 2009 Defendants failed to investigate his "five volume complaint" concerning his treatment, despite Mr. Batts having "determined" that two of his complaints were "manufactured" and "unfounded."  He also alleges that on September 9, 2009, the City Attorney's Office

1    "initiated" a complaint with the Oakland Police Department's Internal Affairs
2    Department related to a claim for damages to an apartment door that was damaged
     when Mr. Morrow and five other officers executed a search.

3        Mr. Morrow fails to sufficiently allege his claim. For example, with respect to the
     May 2007 "adverse" finding by the Internal Affairs Department investigator and to
4    the August 2007 transfer denial, Mr. Morrow never alleges how or why this
     "adverse" finding or the transfer denial was an adverse employment action – that is,
5    how [or] why they materially affected the compensation, terms, conditions, or
     privileges of his employment. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th
6    Cir. 2008); *see also Lee v. Potter*, No. C 07-254 SBA, 2008 WL 4449568, at *9 (N.D.
     Cal. Oct. 1, 2008), *aff'd*, 358 F.Appx. 966 (9th Cir. 2009) ("As the terms and
7    conditions of plaintiff's employment did not objectively change for the worse as a
     result of her lateral transfer or defendant's denial of her requests, it was not an
8    adverse employment action as a matter of law.") (citing *Tran v. Trustees of State
     Colleges in Col.*, 355 F.3d 1263, 1268 (10th Cir. 2004) (transfer without reduction in
9    pay or benefits that requires employee to develop new skills is not adverse
     employment action); *Kortan v. Cal. Youth Authority*, 217 F.3d 1104, 1112 (9th Cir.
10   2000) (reassignment of job duties, falsely accusing employee of not submitting work
     order, ridiculing of employee to co-workers, and unfairly negative performance
11   review are insufficient to establish adverse employment action); *Nidds v. Schindler
     Elevator*, 103 F.3d 854, 860 n.3 (9th Cir. 1996) (transfer to different work site with
12   no reduction in pay not an adverse job action)). Nor does Mr. Morrow allege facts to
     show that the refusal to advance his grievance against the Internal Affairs Department
13   investigator's "adverse" finding was an act of intentional discrimination or was in
     retaliation for his engaging in protected activity. *See Stones*, 796 F.2d at 272
14   *Vasquez*, 349 F.3d at 646. With respect to the failure of certain Defendants to
     investigate and respond to his April 25, 2008 grievance alleging that the investigation
15   of his discrimination complaints itself was being conducted in a racially
     discriminatory way or to his complaints made in his "five volume complaint," Mr.
16   Morrow never alleges facts to show how or why the failure to investigate his
     grievances constitutes an "adverse employment action." Indeed, case law suggests
17   that the failure to investigate employment grievances may not be one. *See Chuang v.
     Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000) ("The lack of a response
18   does not amount to an adverse employment action. The record shows that Davis
     officials investigated Dr. Chuang's complaint and took unspecified disciplinary
19   actions. While the university's failure to inform Dr. Chuang of its findings or
     resulting disciplinary actions was certainly irritating and perhaps unjustified, it did
20   not materially affect the compensation, terms, conditions, or privileges of the
     Chuangs' employment. Nor did the Chuangs present evidence showing that
21   non-Asian or non-Chinese complainants have received formal responses in similar
     circumstances."). Nor does Mr. Morrow allege facts to suggest that certain
22   Defendants' investigation of citizen complaints – such as the City Attorney's Office
     "initiation" investigation of a citizen complaint regarding an apartment door that
23   allegedly was damaged when Mr. Morrow and five other officers executed a search –
     constitutes an "adverse employment action" that materially affected the
24   compensation, terms, conditions, or privileges of his employment. *See Davis*, 520
     F.3d at 1089.

25

26   2/3/2012 Order, ECF No. 35 at 18-20.

27       In his Second Amended Complaint, Mr. Morrow does not include the allegations about the May

28   2007 investigation into allegations made by a "mentally ill crack cocaine addict," but he includes

     allegations about the other incidents described above. Upon review of these allegations, the court

believes that Mr. Morrow has sufficiently alleged a race discrimination or retaliation claim under

Section 1981, but only against Mr. Israel and only with respect to the denial of his transfer request.

Many of his allegations are clearly insufficient.  For example, Mr. Morrow fails to allege facts to

show that Mr. Whent, Mr. Shannon, and Ms. Hoppenhauer's investigation, and their determination

that no discrimination or retaliation occurred, were acts of intentional discrimination, were in

retaliation for his engaging in protected activity, or constituted an "adverse employment action."

*See Davis*, 520 F.3d at 1089; *Stones*, 796 F.2d at 272; *Vasquez*, 349 F.3d at 646.  Instead, his

allegations focus on the investigators' purported lack of expertise at conducting investigations of

discrimination complaints and his lack of confidence in their findings.  *See* SAC, ECF No. 38 at 26-

29, ¶¶ 132-45.  Such allegations are not sufficient.  He also again fails to allege facts to show that the

failure of certain Defendants to investigate and respond to his April 25, 2008 grievance or to his

"five volume complaint" constitutes an "adverse employment action."  *See Chuang v. Univ. of Cal.

Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000).  He also fails to allege facts showing that certain

Defendants' investigation of citizen complaints – such as the City Attorney's Office "initiation"

investigation of a citizen complaint regarding an apartment door that allegedly was damaged when

Mr. Morrow and five other officers executed a search – constitutes an "adverse employment action."

*See Davis*, 520 F.3d at 1089.

But his allegations with respect to the August 2007 transfer denial raise a plausible claim for

relief, which is all that is required at this stage of the proceedings.  *See Twombly*, 550 U.S. at 570;

*Iqbal*, 129 S.Ct. at 1949.  In response to the court's prior order, which informed him that he failed to

allege that the transfer denial was an "adverse employment action," Mr. Morrow added the

following allegations:

> 122.  Plaintiff is informed, believes, and alleged that "CID" assignments are and
> historically have been considered preferred assignments within the OPD which carry
> along with them training opportunities and increased pay by way of intrinsic
> overtime, neither of which are generally available in traditional patrol assignments
> such as the one plaintiff was in at the time he was called about the CID transfer.

> 123.  Plaintiff who has worked for and is familar with other police departments
> knows from experience that although not considered an advancement per se by the
> OPD, such positions are in fact considered advancements in other police departments,
> and in effect because of the aforementioned employment benefits including a more
> flexible work schedule, is in effect an advancement within OPD.

SAC, ECF No. 38 at 24, ¶¶ 122-23.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Whether an employer's action is materially adverse depends on the circumstances. *Burlington*

2    *Northern & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006).  For example, a change in a work schedule

3    may matter little to some employees but may be material to a parent with school-aged children.  *See*

4    *Burlington Northern*, 548 U.S. at 69.  A supervisor's failure to invite a subordinate to lunch may be

5    petty and trivial, or it might be an exclusion from a weekly training lunch that contributes to the

6    employee's professional development.  *See id*.  What matters is whether it might dissuade a

7    reasonable employee from complaining about discrimination.  *See id*.

8        So, for purposes of his Section 1981 discrimination and retaliation claim and Mr. Morrow's

9    allegations that he was improperly denied transfer to the CID, the court finds that he has sufficiently

10   alleged a plausible claim for relief against Mr. Israel.[5]  Mr. Morrow has alleged that he is a member

11   of a protected class (African-American), that he was qualified for the position (he was on the

12   original list of potential transferees), that he suffered an adverse employment action (the transfer list

13   was rescinded and he was not selected for transfer), and that a similarly situated individual outside

14   his protected class was treated more favorably or other circumstances surrounding the adverse

15   employment action give rise to an inference of discrimination (a Caucasian male employee, who had

16   not been on the transfer list, was transferred instead).  *See* SAC, ECF No. 38 at 24, 25, ¶¶ 121-28.

17   He has also alleged that he engaged in a protected activity (made discrimination complaints),

18   suffered an adverse employment action (the transfer denial), and that a causal link between the two

19   events (Mr. Israel was a named defendant in *Morrow I*).

20       Defendants' arguments to the contrary are not persuasive.  They argue that Mr. Morrow "fails to

21   allege any basis for assuming that being on a transfer list would have insured him a CID position"

22   and fails to explain "why the cancellation of the list facilitated [Mr.] Israel's alleged desire[] to deny

23   him the position," but he need not do so.  *See, e.g.*, *McDonnell Douglas*, 411 U.S. at  802; *Fonseca*,

24   374 F.3d at 847.  They also argue that Mr. Morrow does not "explain why he believes he was treated

25   any differently than other Officers on the list who were not selected," but Mr. Morrow clearly states

26   that he believes he was not selected because of his previous discrimination complaints.

27

28   _____

   [5] Mr. Morrow's Section 1981 claim for discrimination and retaliation is brought against the
   Individual Defendants, but his allegations regarding the denial of his transfer request only involve
   Mr. Israel.  Mr. Morrow's Section 1981 claim, then, fails with respect to the other Individual
   Defendants.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    In sum, Mr. Morrow's Section 1981 claim for discrimination and retaliation survives against Mr.

2    Israel in the context of the denial of Mr. Morrow's transfer to the CID, and Defendants' motion to

3    dismiss is DENIED IN PART for that reason.  But the claim fails against the other Individual

4    Defendants and in all other contexts, and Defendants' motion is GRANTED IN PART for that

5    reason.  Thus, to the extent his claim is alleged against Individual Defendants who are not Mr. Israel

6    or based on non-transfer allegations, it is DISMISSED WITH PREJUDICE.  *See Ferdik*, 963 F.2d at

7    1261.

8              ii.  Hostile Work Environment

9    In his First Amended Complaint, Mr. Morrow brought a claim under Title VII for a hostile work

10   environment (his ninth cause of action).  FAC, ECF No. 6 at 57-58, ¶¶ 236-42.  The court dismissed

11   it with prejudice as to the Individual Defendants because, as stated above, individual defendants

12   cannot be held liable for damages under Title VII.  The court then analyzed his claim as to the City

13   in great detail and concluded that the acts he alleged, under the standards articulated by the Ninth

14   Circuit, are not the type of frequent, unwelcome verbal or physical acts that alter the conditions of

15   his employment and create an abusive work environment that are often found to create a hostile

16   work environment.  2/3/2012 Order, ECF No. 35 at 17 (citing *Manatt v. Bank of Am.*, 339 F.3d 792,

17   799 (9th Cir. 2003)).  Thus, the court dismissed his Title VII hostile work environment claim against

18   the City without prejudice.

19   Mr. Morrow did not bring a Title VII hostile work environment claim against the City in his

20   Second Amended Complaint.  Instead, he brought a hostile work environment claim under Section

21   1981.  SAC, ECF No. 38 at 36-37, ¶¶ 179-83.  Although he does not specify against which

22   Defendants he bring his claim, he does incorporate numerous allegations from earlier in his

23   complaint, so the court assumes that he brings it against all Defendants.  *See id.*[6]

24   Although Mr. Morrow added some new allegations to his Second Amended Complaint (or at

25   least re-worded them), the court still finds that the acts he alleges are discrete ones, and not the type

26   of general, demeaning acts that "cannot be said to occur on any particular day" and which "occur[]

27

28

---

[6] Mr. Morrow also states that Defendants' counsel Edwin Wilson has also contributed to the
hostile work environment.  *See* SAC, ECF No. 38 at 37, ¶ 183.  Mr. Wilson is not a defendant in this
case, so the court will disregard Mr. Morrow's statement.

1   over a series of days or perhaps years" but "may not be actionable on [their] own."  *See Morgan*, 536

2   U.S. at 115; *id.* at 114.  As summarized above, the allegations in Mr. Morrow's Second Amended

3   Complaint still revolve around, for example, his being placed under named defendants in *Morrow I*;

4   the denial of his request to transfer to the Criminal Investigative Division; Mr. Whent, Mr. Shannon,

5   and Ms. Hoppenhauer's lack of training and failure to properly investigate the complaints; the

6   failure of the City and Mr. Tucker, Mr. Jordan, and Mr. Batts to respond to his "five-volume

7   complaint"; and the City's investigation of an apartment door that was damaged when Mr. Morrow

8   and five other officers executed a search.

9       His hostile work environment claim under Section 1981, then, fails for the same reason that his

10  hostile work environment claim under Title VII failed previously.  Because he has had an

11  opportunity to cure the deficiencies noted by the court but failed to do so, Defendants' motion to

12  dismiss his hostile work environment claim under Section 1981 is GRANTED, and his claim is

13  DISMISSED WITH PREJUDICE.  *See Ferdik*, 963 F.2d at 1261.

14      <u>2.  Fourteenth Amendment Due Process</u>

15      In his First Amended Complaint, Mr. Morrow brought a claim for violation of his Fourteenth

16  Amendment "due process rights to receive a policy[-]compliant investigation of his EEO

17  complaints" and "to have his grievances about the [Internal Affairs Department] investigations heard

18  before an impartial body."  *See FAC*, ECF No. 6 at 41-43, ¶¶ 171-80.

19      The court dismissed his claim on two grounds.  First, he did not bring his claim through 42

20  U.S.C. § 1983.  2/3/2012 Order, ECF No. 35 at 20-21 (Because the Fourteenth Amendment "is not

21  self-enforcing," a plaintiff alleging race discrimination against a state actor must bring a claim under

22  42 U.S.C. § 1983.) (citing *Johnson v. Sutter Delta Medical Center*, No. C 11–03628 SI, 2011 WL

23  5444319, at *3 (N.D. Cal. Nov. 9, 2011)).  Second, he did not allege violation of a constitutionally

24  protected liberty or property interest.  2/3/2012 Order, ECF No. 35 at 21-22.  The court explained in

25  its previous order:

26          Even if [Mr. Morrow had brought his claim through § 1983], though, the
    guarantee of due process under the Fourteenth Amendment applies only when a

27      constitutionally protected liberty or property interest is at stake.  *Ingraham v. Wright*,
    430 U.S. 651, 672 (1977); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972);

28      *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).  "To establish a
    substantive due process claim, a plaintiff must, as a threshold matter, show a
    government deprivation of life, liberty, or property."  *Nunez v. City of Los Angeles*,
    147 F.3d 867, 871 (9th Cir.1998).  Similarly, "[t]o establish a violation of procedural

1    due process[,] a plaintiff must demonstrate: (1) a deprivation of a constitutionally
     protected liberty or property interest, and (2) a denial of adequate procedural
2    protections." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir.
     2006). [Footnote omitted.]

3

4         Case law suggests that Mr. Morrow's alleged liberty interest – "to receive a
     policy[-]compliant investigation of his EEO complaints" and "to have his grievances
5    about the [Oakland Police Department's Internal Affairs Department] investigations
     heard before an impartial body" – does not exist under the Fourteenth Amendment.
6    *See Wolff v. Town of Mount Pleasant*, No. 06 Civ. 3864(CS)(LMS), 2009 WL
     1468691, at *6 (S.D.N.Y. Apr. 27, 2009), *report and recommendation adopted in
7    part*, 2009 WL 1468620 (S.D.N.Y. May 26, 2009) ("Government entities, however,
     do not have affirmative constitutional responsibilities to investigate charges and
8    complaints brought to them for consideration.") (citing *Bernstein v.. New York*, 591
     F.Supp.2d 448, 460 (S.D.N.Y. 2008) (observing that the due process clause of the
9    Fourteenth Amendment does not impose an affirmative duty on governments to
     conduct investigations); *Garrison v. McQueeney*, No. C 94–3595 TEH, 1995 WL
10   39435, at *3 (N.D. Cal. Jan. 27, 1995) ("California Penal Code § 832.5 provides that
     a procedure to investigate complaints against personnel must be established by every
11   agency which employs peace officers and that a written description of the procedure
     must be made available to the public.  However, this section does not establish a
12   uniform manner in which citizen's complaints are investigated; that task is left to the
     individual agency.  Plaintiff has not alleged that the investigatory procedure followed
13   by the Marin County Sheriff's Department mandated that his three witnesses be
     interviewed.  Absent such a mandate, the investigation of plaintiff's complaint did not
14   have to include the interviews.") (internal citation omitted).  Indeed, even the
     non-existence of, or the failure of prison officials to properly implement, an
15   administrative appeals process within the prison system does not raise constitutional
     concerns.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

16   2/3/2012 Order, ECF No. 35 at 21-22.

17        Now, Mr. Morrow brings a claim for violation of his Fourteenth Amendment "liberty interest to

18   receive a policy compliant IAD investigation with the substantive limitations imposed" by a

19   negotiated settlement agreement involving the City.  SAC, ECF No. 38 at 38, ¶ 186; *see id.* at 37-38,

20   ¶¶ 184-86.  His claim fails for the same reasons as stated above.  First, he did not bring his claim

21   through Section 1983.  Second, even if he had, he has not alleged violation of a constitutionally

22   protected liberty or property interest.  To make out a cause of action under Section 1983, Mr.

23   Morrow must plead a deprivation of rights "secured by the Constitution or federal statutes."  *Gibson*

24   *v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986).  Administrative policies and settlement

25   agreements (such as the negotiated settlement agreement he mentions), even if they did secure

26   rights, do not suffice.  *See Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) ("To

27   the extent that the violation of a state law amounts to the deprivation of a state-created interest that

28   reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.")

     (quoting *Lovell v. Poway Unified School District*, 90 F.3d 367, 370 (9th Cir. 1996)); *Green v.*

1  *McKaskle*, 788 F.2d 1116, 1122-23 (5th Cir. 1986) ("Remedial decrees do not create or enlarge

2  constitutional rights" and are not "sufficient to serve as a basis for liability under § 1983."); *see also*

3  *Klein v. Zavaras*, 80 F.3d 432, 435 (10th Cir. 1996); *DeGidio v. Pung*, 920 F.2d 525 (8th Cir. 1990).

4      The court, in its previous order, gave Mr. Morrow ample guidance with respect to his claim for

5  violation of his Fourteenth Amendment rights.  Because he has attempted, but failed, to cure the

6  deficiencies noted by the court, his claim for violation of his Fourteenth Amendment rights is

7  DISMISSED WITH PREJUDICE.  *See Ferdik*, 963 F.2d at 1261.

8  <u>C.  Mr. Morrow's State Law Claims</u>

9      <u>1.  California Government Code § 12940(j) and (k)</u>

10      In the fourth cause of action in his Second Amended Complaint, Mr. Morrow alleges violations

11  of two provisions found within California's Fair Employment and Housing Act,  Cal. Gov't Code §§

12  12900-12996.  SAC, ECF No. 38 at 38-39, ¶¶ 187-91.

13      The first provision, California Government Code § 12940(j), makes harassment illegal and

14  requires an employer to take immediate and appropriate action against it.  The provision provides in

15  relevant part:

16      It is an unlawful employment practice, unless based upon a bona fide occupational
        qualification, or, except where based upon applicable security regulations established
17      by the United States or the State of California: . . . (j)(1) For an employer . . . or any
        other person, because of race, religious creed, color, national origin, ancestry,
18      physical disability, mental disability, medical condition, genetic information, marital
        status, sex, gender, gender identity, gender expression, age, or sexual orientation, to
19      harass an employee, an applicant, or a person providing services pursuant to a
        contract.  Harassment of an employee, an applicant, or a person providing services
20      pursuant to a contract by an employee, other than an agent or supervisor, shall be
        unlawful if the entity, or its agents or supervisors, knows or should have known of
21      this conduct and fails to take immediate and appropriate corrective action.

22  Cal. Gov't Code § 12940(j)(1).  Employers and non-employer individuals alike may be liable for

23  harassment violations under § 12940(j).  *Fitzsimons v. California Emergency Physicians Medical*

24  *Group*, --- Cal. App. 4th ----, 2012 WL 1699850, at *2 (May 16, 2012).

25      The second provision, California Government Code § 12940(k), requires an employer to take

26  reasonable steps to prevent discrimination and harassment.  The provision provides:

27      It is an unlawful employment practice, unless based upon a bona fide occupational
        qualification, or, except where based upon applicable security regulations established
28      by the United States or the State of California: . . . (k) For an employer, labor
        organization, employment agency, apprenticeship training program, or any training
        program leading to employment, to fail to take all reasonable steps necessary to
        prevent discrimination and harassment from occurring.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Cal. Gov't Code § 12940(j).  Mr. Morrow alleges that Defendants violated both Section 12940(j)

2   and Section 12940(k) when they "violated their non-discretionary reporting and investigative duties"

3   under the City's administrative policies and the negotiated settlement agreement.  SAC, ECF No. 38

4   at 38-39, ¶¶ 187-88.

5       Defendants challenge Mr. Morrow's claims on two grounds.  First, they argue that Mr. Morrow

6   has not exhausted his administrative remedies.  As the court explained in its prior order, "[u]nder the

7   FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a

8   complaint with [California's] Department of Fair Employment and Housing [("DFEH")] and must

9   obtain from [the DFEH] a notice of right to sue in order to be entitled to file a civil action in court

10  based on violations of the FEHA."  *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996)

11  (citing Cal. Gov't Code §§ 12960, 12965(b); *Martin v. Lockheed Missiles & Space Co.*, 29

12  Cal.App.4th 1718, 1724 (1994); *Rojo v. Kliger*, 52 Cal.3d 65, 88 (1990)).  "The timely filing of an

13  administrative complaint is a prerequisite to the bringing of a civil action for damages under the

14  FEHA."  *Id.* (citing *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 349 (1993); *Denny v.*

15  *Universal City Studios, Inc.*, 10 Cal. App. 4th 1226, 1232 (1992)).

16      Mr. Morrow again alleges that he received multiple right-to-sue notices from the EEOC, *see*

17  SAC, ECF No. 38 at 10, 35, ¶¶ 47, 173, but "[a]n EEOC right-to-sue letter does not satisfy the

18  jurisdictional requirement of exhaustion of remedies as to FEHA claims."  *Alberti v. City & County*

19  *of San Francisco Sheriff's Dept.*, 32 F.Supp.2d 1164, 1174 (N.D. Cal. 1998 (*citing Martin v.*

20  *Lockheed Missiles & Space Co.*, 29 Cal.App.4th 1718, 1724 (1994)).  He does allege, though, that he

21  "has exhausted the applicable remedies available to him under [FEHA] by filing a complaint

22  regarding the matters described below" and that FEHA "has issued a right to sue notice."  SAC, ECF

23  No. 38 at 2, ¶ 5.  He also alleges that he filed complaints with FEHA on January 27, 2006 (regarding

24  the City's lack of participation in an interactive process to resolve his complaints) and on November

25  24, 2006 (regarding the City's placing him under the command of named defendants in *Morrow I*).

26  *Id.* at 18, 23, ¶¶ 91, 116.  He also alleges that "[o]n February 8, 2012, the California Fair

27  Employment and Housing Administration issued [him] a right to sue notice for [the City's] failure to

28  take all reasonable steps necessary to prevent discrimination and [the City's] maintenance of a

continuing hostile work environment."  *Id.* at 35, ¶ 175.

C 11-02351 LB
ORDER

1    Defendants say that these allegations are not good enough because under California Government

2    Code § 12965 Mr. Morrow had one year from the date of his FEHA complaints to file suit and he

3    did not do so.  Motion to Dismiss, ECF No. 40 at 14-15.  Mr. Morrow counters that any delay in

4    filing suit based on his FEHA complaints was because he was voluntarily pursuing internal

5    administrative remedies.  Plaintiff's Opposition, ECF No. 52 at 12-19 (citing *McDonald v. Antelope*

6    *Valley Comm. College Dist.*, 45 Cal. 4th 88 (2008)).  In their reply, Defendants did not address Mr.

7    Morrow's arguments regarding tolling.  *See* Reply, ECF No. 55.  In light of Defendants' failure to do

8    so, and in light of Mr. Morrow's allegations (although they are limited in detail) to show exhaustion

9    of his administrative remedies, Defendants' argument is unpersuasive and Mr. Morrow's allegations

10   are sufficient at least for this stage of the case.[7]

11       Second, Defendants argue that Mr. Morrow's fourth cause of action simply is not sufficiently

12   alleged.  In alleging it, Mr. Morrow incorporates virtually all of the allegations in this complaint and

13   then alleges that Defendants' actions violated the duties under the City's policies and the negotiated

14   settlement agreement.  SAC, ECF No. 38 at 38-39, ¶ 188.

15       The court agrees with Defendants on the harassment claim under subsection (j) but does not

16   entirely agree with them on the failure-to-prevent-discrimination claim under subsection (k).  First,

17   Mr. Morrow simply has not sufficiently alleged a harassment claim under Section 12940(j).  As one

18   district court has recently explained:

19           "FEHA is violated when the harassment was sufficiently severe or pervasive to alter
             the conditions of the victim's employment. . . . .  In determining what constitutes
20           'sufficiently pervasive' harassment, the courts have held that acts of harassment
             cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a
21           concerted pattern of harassment of a repeated, routine of a generalized nature."  *Etter*
             *v. Veriflo Corp.*, 67 Cal. App. 4th 457, 465, 79 Cal. Rptr. 2d 33 (Cal. App. 1st Dist.
22           1998).  "California Code of Regulations, title 2, section 7287.6, subdivision (b) (1) . .
             . provides that harassment includes, but is not limited to, verbal epithets or derogatory
23           comments, physical interference with freedom of movement, derogatory posters or
             cartoons, and unwanted sexual advances.  As the regulation implies harassment
24           consists of a type of conduct not necessary for performance of a supervisory job.
             Instead, harassment consists of conduct outside the scope of necessary job
25           performance, conduct presumably engaged in for personal gratification, because of
             meanness or bigotry, or for other personal motives.  Harassment is not conduct of a
26           type necessary for management of the employer's business or performance of the
             supervisory employee's job."  *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th
27           55, 63, 53 Cal. Rptr. 2d 741 (Cal. App. 2d Dist. 1996).  Personnel management action

28   _____

        [7] Defendants, of course, are free to raise the issue of whether Mr. Morrow exhausted his
administrative remedies on summary judgment.

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5

must be analyzed in the context of discrimination as opposed to harassment. *Lewis v. UPS, Inc.*, 252 Fed. Appx. 806, 808 (9th Cir. 2007) (threat of termination can not be analyzed as harassment because it is a personnel management action). However, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message" if done in an "unnecessarily demeaning" manner. *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 n.10, 101 Cal. Rptr. 3d 773, 219 P.3d 749 (Cal. 2009) (examples include "shunning of Roby during staff meetings, Schoener's belittling of Roby's job, and Schoener's reprimands of Roby in front of Roby's coworkers").

6   *Hardin v. Wal-Mart Stores, Inc.*, No. CIV–F–08–0617 AWI BAM, 2012 WL 691707, at *25 (E.D.

7   Cal. Mar. 2, 2012). "Given California's clear distinction between discrimination and harassment,"

8   *id.* at *26, and similar to the court's explanation with respect to his Section 1981 hostile work

9   environment claim, the court does not believe that Mr. Morrow's allegations evidence the type of

10   pervasive, non-discrete harms that constitute a harassment claim. His allegations describe discrete

11   instances of alleged discrimination, not a "pattern of harassment of a repeated, routine of a

12   generalized nature." For this reason, and because the court has previously given Mr. Morrow an

13   opportunity to cure similar defects, the court GRANTS Defendants' motion to dismiss Mr.

14   Morrow's Section 12940(j) claim and DISMISSES IT WITH PREJUDICE. *See Ferdik*, 963 F.2d at

15   1261.

16   Second, with respect to Mr. Morrow's failure-to-prevent-discrimination claim under Section

17   12940(k), Mr. Morrow has sufficiently alleged only a claim against the City based upon his transfer

18   denial. As an initial matter, the Individual Defendants cannot be liable for failure to prevent

19   discrimination under subsection (k). To state a claim for failure to prevent discrimination under

20   Section 12940(k), a plaintiff must allege that (1) plaintiff was subjected to discrimination, (2)

21   defendant failed to take all reasonable steps necessary to prevent discrimination, and (3) this failure

22   caused plaintiff to suffer injury, damage, loss or harm. *See Leland v. City and County of San*

23   *Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). It follows that a claim under subsection

24   (k) cannot not proceed in the absence of an underlying discrimination claim. *See Kohler v. Inter–Tel*

25   *Technologies*, 244 F.3d 1167, 1174 n.4 (9th Cir. 2001); *Trujillo v. Transit Dist.*, 63 Cal. App. 4th

26   280, 286–89 (1988). But non-employer individuals (e.g., supervisors, coworkers, etc.) cannot be

27   liable for discrimination, *Reno v. Baird*, 18 Cal. 4th 640, 644 (1998), or retaliation, *Jones v. Lodge at*

28   *Torrey Pines P'ship*, 42 Cal. 4th 1158, 1173 (2008), under FEHA. *See Leland*, 576 F. Supp. 2d at

1089.

1   With respect to the City, though, Mr. Morrow states a claim.  To allege discrimination, a plaintiff

2   must allege that he or she suffered an "adverse employment action."  *See Gun v. Bechtel Nat'l, Inc.*,

3   24 Cal. 4th 317, 354 (2000).  The definition of an "adverse employment action" under FEHA is

4   similar to the definition under Title VII: it is any action that "materially affect[s] the terms and

5   conditions of employment."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1036 (2005).  As

6   explained above with respect to Mr. Morrow's Section 1981 claim (which uses the same standard as

7   Title VII), only his allegations regarding his transfer denial constitute an "adverse employment

8   action."

9   Accordingly, his failure-to-prevent-discrimination claim under Section 12940(k) survives as

10  against the City in the context of the denial of Mr. Morrow's transfer to the CID, and Defendants'

11  motion to dismiss is DENIED IN PART for that reason.  But the claim fails against the Individual

12  Defendants and in all other contexts, and Defendants' motion is GRANTED IN PART for that

13  reason.  Thus, to the extent his claim is alleged against the Individual Defendants and is based on

14  non-transfer allegations, it is DISMISSED WITH PREJUDICE.  *See Ferdik*, 963 F.2d at 1261.

15  2.  California Government Code § 12940(h)

16  In his fifth cause of action, Mr. Morrow alleges that the City retaliated against him in violation of

17  California Government Code § 12940(h).  SAC, ECF No. 38 at 39, ¶¶ 189-91.  That provision

18  provides:

19          It is an unlawful employment practice, unless based upon a bona fide occupational
            qualification, or, except where based upon applicable security regulations established
20          by the United States or the State of California: . . .  (h) For any employer, labor
            organization, employment agency, or person to discharge, expel, or otherwise
21          discriminate against any person because the person has opposed any practices
            forbidden under this part or because the person has filed a complaint, testified, or
22          assisted in any proceeding under this part.

23  Cal. Gov't Code § 12940(h).

24  In order to make out a prima facie case of retaliation, a plaintiff must show that (1) he or she

25  acted to protect her rights; (2) that an adverse employment action was thereafter taken against him or

26  her; and (3) that a causal link exists between those two events.  *See Haley v. Cohen & Steers Capital

27  Management, Inc.*, No. C 10–3856 PJH, 2012 WL 1669366, at *13 (N.D. Cal. May 11, 2012) (citing

28  *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994); *Yanowitz*, 36 Cal.4th at

    1042).  Again, under FEHA, no individual liability attaches for claims of retaliation.  *See Leland*,

UNITED STATES DISTRICT COURT
For the Northern District of California

1  576 F. Supp. 2d at 1089 (citing *Jones*, 42 Cal. 4th at 1173).

2      Mr. Morrow alleges that the City violated this provision when it "ensur[ed] [that his] complaints

3  were never investigated or never investigated in any meaningful manner and thereby altered the

4  terms of conditions of [his] employment by subjecting [him] to a continual hostile work

5  environment."  SAC, ECF No. 38 at 39, ¶¶ 189-91.

6      Defendants again argue that Mr. Morrow failed to allege exhaustion of his administrative

7  remedies, but their argument is unpersuasive for the reason described above.  They also argue that

8  his Section 12940(h) claim is insufficiently alleged.  Again, the court's reasoning with respect to Mr.

9  Morrow's alleged "adverse employment actions" applies.  Mr. Morrow has only alleged a "adverse

10  employment action" with respect to his transfer denial.

11      Accordingly, his retaliation claim under Section 12940(h) survives as against the City in the

12  context of the denial of Mr. Morrow's transfer to the CID, and Defendants' motion to dismiss is

13  DENIED IN PART for that reason.  But the claim fails against the Individual Defendants and in all

14  other contexts, and Defendants' motion is GRANTED IN PART for that reason.  Thus, to the extent

15  his § 12940(h) claim is alleged against the Individual Defendants based on non-transfer allegations,

16  it is DISMISSED WITH PREJUDICE.  *See Ferdik*, 963 F.2d at 1261.

17      2.  Retaliation in Violation of California Labor Code § 1102.5

18      Mr. Morrow alleges for the first time in the sixth cause of action of his Second Amended

19  Complaint a claim against the City for retaliation in violation of California Labor Code § 1102.5.

20  SAC, ECF No. 38 at 39, ¶¶ 192-94.  He alleges this claim against the City only.

21      Section 1102.5 is a "whistle-blower" protection statute.  *Ferretti v. Pfizer Inc.*, No.

22  11–CV–04486 LHK, --- F.Supp.2d ----, 2012 WL 694513, at *4 (N.D. Cal. Feb. 29, 2012).  The

23  provision that Mr. Morrow believes Defendants violated provides that "[a]n employer may not

24  retaliate against an employee for disclosing information to a government or law enforcement agency,

25  where the employee has reasonable cause to believe that the information discloses a violation of

26  state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

27  Cal. Labor Code § 1102.5(b).  California Labor Code § 98.7, in turn, provides: "Any person who

28  believes that he or she has been discharged or otherwise discriminated against in violation of any

law under the jurisdiction of the Labor Commissioner may file a complaint with the division within

1    six months after the occurrence of the violation."

2        Judge Koh recently held that a plaintiff is required to exhaust his or her administrative remedies

3    under California Labor Code § 98.7 before filing a claim for violation of California Labor Code §

4    1102.5. *Ferretti*, 2012 WL 694513, at \*4-6. She explained:

> As the California Supreme Court reaffirmed in *Campbell v. Regents of University of California*, 35 Cal. 4th 311, 25 Cal. Rptr. 3d 320, 106 P.3d 976 (2005), "the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Id*. at 321, 25 Cal. Rptr. 3d 320, 106 P.3d 976 (internal quotation marks and citation omitted). "In *Campbell*, the California Supreme Court expressly held that even though § 1102.5 is silent as to any requirement for administrative exhaustion, 'the past 60 years of California law on administrative remedies' nevertheless compelled the conclusion that a person bringing a claim under the section is subject to the exhaustion requirement." *Reynolds v. City and Cnty. of San Francisco*, Case No. 09–CV–0301–RS, 2011 WL 4808423, at \*1 (N.D. Cal. Oct. 11, 2011) (quoting *Campbell*, 35 Cal. 4th at 329, 25 Cal. Rptr.3d 320, 106 P.3d 976) (emphasis in original). Thus, under *Campbell*, because section 98.7 provides Plaintiff an administrative remedy for a violation of section 1102.5(c), Plaintiff was required to exhaust that remedy before filing her section 1102.5 claim in federal court. Plaintiff has not alleged that she filed a complaint with the Labor Commissioner. Although the *Campbell* court noted that there are some exceptions to the exhaustion requirement, 35 Cal. 4th at 322, 25 Cal. Rptr.3d 320, 106 P.3d 976, Plaintiff has not alleged that any of those exceptions apply here.
>
> Plaintiff cites *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320, 90 Cal. Rptr. 3d 872 (2009), *Cates v. Division of Gambling & Control*, D046874, 2007 WL 702229, at \*11 (Cal. Ct. App. Mar. 8, 2007) (unpublished), and *Creighton v. City of Livingston*, Case No. CV–F–08–1507 OWW/SMS, 2009 WL 3246825 (E.D. Cal. Oct. 7, 2009) for the proposition that, under California law, a plaintiff is not required to exhaust her administrative remedy under section 98.7 before filing a court action. Opp'n 6. For reasons that this Court finds persuasive, a sister court in this district has declined to follow *Lloyd* and *Creighton*. *See Dolis v. Bleum USA, Inc.*, Case No. 11–CV–2713–TEH, 2011 WL 4501979, at \*2 (N.D. Cal. Sept. 28, 2011). As Judge Henderson stated, "this Court does not find *Lloyd* persuasive because the case made no attempt to reconcile *Campbell* or any of the cases cited therein that established the general rule requiring administrative exhaustion." *Id*. Judge Henderson also "disagree[d] with the narrow reading of *Campbell* adopted by the district court in *Creighton*. . . ." *Id*. at \*2 n. 1.
>
> Indeed, since *Campbell* was decided in 2005, "courts in this district have uniformly held that claims under section 1102.5 must first be presented to the Labor Commissioner" before a court can consider them. *Reynolds*, 2011 WL 4808423, at \*1 (citing *Carter v. Dep't of Corr.*, No. 09–CV–2413–JF, 2010 WL 2681905, at \*9–10 (N.D. Cal. July 6, 2010)); *see also Sullivan v. Aramark Uniform and Career Apparel, Inc.*, Case No. 11–CV–2973–HRL, 2011 WL 3360006, at \*6 (N.D. Cal. Aug. 3, 2011); *Hall v. Apartment Inv. and Mgmt. Co.*, Case No. 08–CV–3447–CW, 2008 WL 5396361, at \*3 (N.D. Cal. Dec. 19, 2008); *Romaneck v. Deutsche Asset Mgmt.*, Case No. 05–CV2473–TEH, 2006 WL 2385237, at \*6 (N.D. Cal. Aug. 17, 2006). The Court agrees that this reading is most faithful to the California Supreme Court's decision in Campbell.

*Id*. at \*5 (footnote omitted).

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    This court agrees with both Judge's Koh's (and Judge Henderson's) reasoning and holding.  And

2    because Mr. Morrow has not alleged that he filed a complaint with the California Labor

3    Commissioner and exhausted his administrative remedies, his claim fails and is DISMISSED

4    WITHOUT PREJUDICE.[8]

5                                    **V.  CONCLUSION**

6    Based on the foregoing, Plaintiff's motion to stay is DENIED and Defendants' motion to dismiss

7    Mr. Morrow's Second Amended Complaint is GRANTED IN PART and DENIED IN PART.  The

8    status of his claims is as follows:

9    1.  Mr. Morrow's Section 1981 claim for discrimination and retaliation survives against Mr. Israel

10       in the context of the denial of Mr. Morrow's request to transfer to the CID.  But to the extent his

11       claim is alleged against any other Individual Defendants or based on non-transfer allegations, it

12       is DISMISSED WITH PREJUDICE.

13   2.  Mr. Morrow's Section 1981 claim for a hostile work environment is DISMISSED WITH

14       PREJUDICE against all Defendants.

15   3.  Mr. Morrow's claim for violation of his Fourteenth Amendment rights is DISMISSED WITH

16       PREJUDICE against all Defendants.

17   4.  Mr. Morrow's Section 12940(j) claim is DISMISSED WITH PREJUDICE against all

18       Defendants.

19   5.  Mr. Morrow's Section 12940(k) claim survives against the City in the context of the denial of

20       Mr. Morrow's request to transfer to he CID.  But to the extent his claim is alleged against the

21       Individual Defendants or based on non-transfer allegations, it is DISMISSED WITH

22       PREJUDICE.

23   6.  Mr. Morrow's claim against the City for retaliation in violation of California Labor Code §

24       1102.5 is DISMISSED WITHOUT PREJUDICE.

25   Mr. Morrow may file a Third Amended Complaint within 21 days from the date of this order.

26   _____

27       [8] In the sixth paragraph of his Second Amended Complaint, Mr. Morrow alleges that "[he]
     has timely filed a claim for damages under the Government Tort Claims Act (Government Code
28   section 910, et seq.).  This claim is still pending within defendant City."  SAC, ECF No. 38 at 2, ¶ 6.
     The court does not to which claim this allegation pertains.  To the extent it represents a new claim,
     the court finds it insufficiently alleged and DISMISSED IT WITHOUT PREJUDICE.

1    This disposes of ECF Nos. 39, 46.

2    **IT IS SO ORDERED.**

3    Dated: June 12, 2012

4                                                    _____
                                                     LAUREL BEELER
5                                                    United States Magistrate Judge