UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| FRANK MORROW, | No. C 11-02351 LB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | [Re: ECF No. 56] |

# I. INTRODUCTION

On May 12, 2011, *pro se* plaintiff Frank Morrow sued the City of Oakland, California (the "City") and numerous individuals (the "Individual Defendants") (collectively, "Defendants") for violation of state and federal law in relation to his employment as an Oakland police officer. *See* Original Complaint, ECF No. 1.[1] The court dismissed his First Amended Complaint on February 3, 2012, and Mr. Morrow filed a Second Amended Complaint on February 17, 2012. Second Amended Complaint ("SAC"), ECF No. 38; *see* 2/3/2012 Order, ECF No. 35. On June 4, 2012, Mr. Morrow filed a motion for a temporary restraining order ("TRO"). Motion for TRO, ECF No. 56.

# II. BACKGROUND

The court has previously described the background facts and allegations relating to Mr.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

Morrow's lawsuit, so it will not repeat them here. *See* 2/3/2012 Order, ECF No. 35. Instead, the court will describe only the facts relevant to Mr. Morrow's motion for a TRO below.

On February 17, 2012, Mr. Morrow filed a Second Amended Complaint. Second Amended Complaint ("SAC"), ECF No. 38. In it, he alleges that he "has timely filed a claim for damages under the Government Tort Claims Act (Government Code section 910, et seq.). This claim is still pending within [the] City." SAC, ECF No. 38 at 2, ¶ 6.

On March 8, 2012, Defendants filed a motion to dismiss Mr. Morrow's Second Amended Complaint. Motion to Dismiss SAC, ECF No. 39. Attached to it is a declaration of Denise Heard, a claims investigator for the City. Heard Declaration, ECF No. 40-1. She declares that she is "the duly authorized Custodian of Records for claims filed with the City of Oakland pursuant to Government Code Section 910 et seq." *Id*. at 1. Attached as Exhibit A to her declaration is "a true and correct copy of the claim filed by Frank Morrow on February 23, 2012." *Id*. at 2. She also declares that as of the date of her declaration (March 7, 2012), "there is no record that any other claim has been filed by Mr. Morrow since December 28, 2004." *Id*.

Mr. Morrow took issue with Ms. Heard's declaration. In his motion for a TRO, he writes: "On March 7, 2012[,] despite the fact that [he] and [the] City were engaged in litigation throughout 2005 through 2007 in both federal and state court, where [he] put [the] City on actual and constructive notice [that] he was in fact making a claim for damages, [the] City's Denise Heard possibly drafted and signed a declaration falsely asserting that [the] City had no record of any other claim filed since December 28, 2004." Motion for TRO, ECF No. 56 at 7 (footnote omitted). So, "[o]n March 15, 2012[,] [he] sent [Ms. Heard] a letter directing her to cease and desist delivering false information to the court." *Id*. As a result of his sending this letter, Mr. Morrow "was notified by an official of [the Oakland Police Department's ("OPD") Internal Affairs Department ("IAD")] that he was being subjected to a 'police misconduct' investigation." *Id*. Mr. Morrow states that this investigation "is due to commence soon." *Id*.

Mr. Morrow now seeks a TRO preventing the OPD from conducting its investigation. *Id*. at 8. He filed his motion for a TRO on June 4, 2012, three days before the court's previously scheduled hearing on Defendants' motion to dismiss Mr. Morrow's Second Amended Complaint. Mr. Morrow

C 11-02351 LB
ORDER

2

1 also moved on an *ex parte* basis; he sent the motion papers to the Clerk of the Court for filing but he
2 did not serve Defendants. Proof of Service, ECF No. 58 (noting that he sent his motion to the Clerk
3 of the Court but not to Defendants).

### III. LEGAL STANDARD

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429 (1974). A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that it is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008). A temporary restraining order may be issued without providing the opposing party an opportunity to be heard only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

The standards for a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 129 S.Ct. at 376. The irreparable injury must be both likely and immediate. *See id.* at 374-75; *Carribean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief").

Prior to *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to prove either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) [ ] serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (citation omitted). In this continuum, "the greater the relative hardship to [a plaintiff], the less probability of success must be shown." *Id.* Following *Winter*, the Ninth Circuit held that although the Supreme Court invalidated the sliding scale approach, the "serious questions" prong of the sliding scale survived so

long as the plaintiff satisfied the other elements for preliminary relief. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Thus, a preliminary injunction may be appropriate when a plaintiff raises "serious questions going to the merits" of the case and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief are also satisfied. *Id.* at 1132.

### IV. DISCUSSION

A. Mr. Morrow Has Not Complied with Rule 65's Requirements for the Issuance of TRO on an *Ex Parte* Basis

Rule 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Here, Mr. Morrow has not served his motion on Defendants and has moved for a TRO on an ex parte basis. Proof of Service, ECF No. 58 (noting that he sent his motion to the Clerk of the Court but not to Defendants). He did not set forth specific facts in an affidavit or a verified complaint that clearly show that immediate and irreparable harm will result if he were to first properly serve Defendants, nor did he certify in writing any efforts he made to give Defendants notice and the reasons why it should not be required. His motion fails on this basis.

B. Mr. Morrow Has Not Met His Burden to Receive a TRO

Even if he had complied with the proper procedures for seeking a TRO on an *ex parte* basis, he does not meet his burden to show that one should be issued.

As stated above, Mr. Morrow must demonstrate that he will likely suffer immediate and irreparable harm without a temporary restraining order. *See Winter*, 129 S.Ct. at 374-75; *Carribean Marine Services*, 844 F.2d at 674. This is "the single most important prerequisite for the issuance of" a TRO or preliminary injunction. *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).

Mr. Morrow has not done so. As an initial matter, the court notes that it appears that Mr. Morrow contends that he will suffer harm not from the results of the investigation (although he may believe this, too, if the investigators find that he committed misconduct) but from being the subject of the investigation in the first place. Assuming that this is Mr. Morrow's contention, the court does not believe that Mr. Morrow has sufficiently shown how he will be harmed. He has not sufficiently shown, for instance, that being the subject of an investigation is an "adverse employment event" that materially affects the compensation, terms, conditions, or privileges of his employment. He also suggests that his speech, as a private citizen rather than as an OPD police officer, will be chilled, but he has made no showing how such harm, to the extent is exists, is irreparable. Mr. Morrow also has not sufficiently shown that the harm is immediate. Aside from stating that the investigation "is due to commence soon," he submits no evidence to this effect and gives the court no indication of how soon "soon" is. In sum, Mr. Morrow's motion does not contain sufficient justification to allow the court to grant the "extraordinary remedy" of a TRO, especially when Mr. Morrow moved for it on an *ex parte* basis.

Because the court has concluded that Mr. Morrow has not sufficiently shown that he will suffer immediate and irreparable harm if a TRO is not issued, the court need not consider whether Mr. Morrow is likely to prevail on the merits of his claims[2], whether the balance of equities tips in his favor, or whether a TRO is in the public interest. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (showing of a likelihood of irreparable harm is required in every instance).[3]

---

[2] In his motion, Mr. Morrow contends that the OPD IAD's investigation constitutes retaliation in violation of: (1) his Fourteenth Amendment due process rights; (2) his Fourteenth Amendment equal protection rights; (3) 42 U.S.C. § 1981; (4) § 12940(h) of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(h); (5) California Labor Code § 1102.5; (6) the City's Administrative Instruction 71; and (7) the negotiated settlement agreement reached in *Allen v. City of Oakland*, No. C00-4599 TEH (N.D. Cal.). He also contends that the investigation: (8) abridges his First Amendment free speech rights; and (9) violates the litigation privilege codified at California Code § 47.

[3] The Ninth Circuit further explained:

In *Winter*, the Supreme Court definitively refuted our "possibility of irreparable injury" standard, stating "the Ninth Circuit's 'possibility' standard is too lenient. Our

## V. CONCLUSION

Based on the foregoing, Mr. Morrow's *ex parte* motion for a TRO is DENIED.

**IT IS SO ORDERED.**

Dated: June 12, 2012

_____
LAUREL BEELER
United States Magistrate Judge

---

frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 129 S.Ct. at 375. The Court instructed that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 375–76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam)).

*Stormans*, 586 F.3d at 1127.

C 11-02351 LB
ORDER

6