UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| FRANK MORROW, | No. C 11-02351 LB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF OAKLAND, et al., | [Re: ECF No. 185] |
| Defendants. | |
| _____/ | |

### INTRODUCTION

On May 12, 2011, *pro se* plaintiff Frank Morrow sued the City of Oakland, California (the "City") and numerous individuals, including Jeffrey Israel, Deputy Chief of the Oakland Police Department ("Deputy Chief Israel"), for violations of state and federal law in relation to his employment as an Oakland police officer. *See* Original Complaint, ECF No. 1.[1] Defendants who remain in this action—the City and Deputy Chief Israel—now move for summary judgment. Amended Summary Judgment Motion, ECF No. 185. Officer Morrow opposes their motion. Amended Opposition, ECF No. 192. Upon review and consideration of the papers and admissible evidence submitted, the arguments of the parties at the December 19, 2013 hearing, and the applicable authority, the court **GRANTS** Defendants' motion.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

**STATEMENT**

## I. PROCEDURAL HISTORY

This lawsuit is the fifth in a series of related actions.  In the first lawsuit, *Castaneda v. City of Oakland*, No. C02-05358 MHP, which was filed in state court on May 16, 2001 and removed to federal court on November 8, 2002, Officer Morrow was accused by a member of the public—Ms. Castaneda—of engaging in inappropriate conduct during the course of her arrest.  Wilson MTD Declaration, Ex. A, ECF No. 13-1.  The lawsuit settled on March 31, 2004 after a settlement conference with Magistrate Judge Zimmerman.  *See Castaneda v. City of Oakland*, No. C02-05358 MHP, ECF No. 47 ("April 1, 2004 Minute Entry").

In the second lawsuit, *Morrow v. City of Oakland*, No. C04-00315 MHP ("*Morrow I*"), filed on February 11, 2004 (while *Castaneda* was still pending), Officer Morrow alleged under 42 U.S.C. §§ 1983 and 1985 that the City's and numerous local officials' handling of the internal investigation surrounding Ms. Castaneda's allegations violated his First Amendment right to free speech, his Fourth Amendment right to be free from unreasonable search and seizures, and his Fourteenth Amendment right to equal protection.  Wilson MTD Declaration, Ex. B, ECF No. 13-2 ("*Morrow I* Complaint").  He also brought nine state law causes of action.  *Id.*  Deputy Chief Israel was named as defendant to this action.  *Id.  Morrow I* settled on April 20, 2004 pursuant to a written agreement.  Wilson MTD Declaration, Ex. C, ECF No. 13-3 ("April 20, 2004 Settlement Agreement").  The April 20, 2004 Settlement Agreement released "defendants CITY OF OAKLAND . . . and their respective agents [and] attorneys" from liability for claims arising out of or related to either *Castaneda* or *Morrow I.  Id.* at 5.

In the third lawsuit, *Morrow v. City of Oakland*, No. C05-00270 MHP ("*Morrow II*"), filed on January 18, 2005, Officer Morrow alleged several additional claims under 42 U.S.C. § 1983 for violations of his Constitutional rights, including claims that the City and its attorneys denied him his First Amendment right to freedom of speech, Fourteenth Amendment right to due process, and Fourteenth Amendment right to equal protection.  Wilson MTD Declaration, Ex. D, ECF No. 13-4 ("*Morrow II* Complaint").  He also alleged seven state law torts, including abuse of process, intentional infliction of emotional distress, defamation, and fraud.  *Id.*  Judge Patel, who presided

UNITED STATES DISTRICT COURT
For the Northern District of California

over *Castaneda* and *Morrow I* as well, dismissed Officer Morrow's federal claims because they were barred by res judicata and the April 20, 2004 Settlement Agreement, and she declined to exercise supplemental jurisdiction over his state law claims. Wilson MTD Declaration, Ex. E, ECF No. 13-5 ("Judge Patel's Order of Dismissal"). Her order was later affirmed by the Ninth Circuit Court of Appeals. *See Morrow v. City of Oakland*, 200 Fed. Appx. 644, 645-46, 2006 WL 2472190, at *1 (9th Cir. 2006).

In the fourth lawsuit, *Morrow v. City of Oakland*, No. RG06250127 (Alameda County Sup. Ct.) ("*Morrow III*"), filed in state court on January 10, 2006, Officer Morrow alleged violations of his state constitutional rights, ineffective assistance of counsel, fraud, abuse of process, defamation, and negligent and intentional infliction of emotional distress. Wilson MTD Declaration, Ex. G, ECF No. 13-7 ("*Morrow III* Complaint"). The state court dismissed all of his claims with prejudice. Wilson MTD Declaration, Ex. H, ECF No. 13-8 ("Superior Court Order Sustaining Demurrer"). The lower court's decision was affirmed by the California Court of Appeals. *See Morrow v. City of Oakland*, No. A116338, 2007 WL 2677288, at *4 (Cal. Ct. App. 1st Dist. 2007).

The instant action, filed on May 12, 2011, is the fifth lawsuit. *See* Original Complaint, ECF No. 1. Officer Morrow filed a First Amended Complaint as a matter of course on September 14, 2011, and the court dismissed it, pursuant to Defendants' motion, on February 3, 2012. First Amended Complaint ("FAC"), ECF No. 6; 2/3/2012 Order, ECF No. 35. Officer Morrow filed a Second Amended Complaint on February 17, 2012. Second Amended Complaint ("SAC"), ECF No. 38. This time, Officer Morrow named as defendants the City, along with the former Oakland City Attorney (John Russo), an attorney in the City Attorney's Office (Vicki Laden), three former Chiefs of the Oakland Police Department (Wayne Tucker, Howard Jordan, and Anthony Batts), a Deputy Chief of the Oakland Police Department (Jeffrey Israel), three Oakland Police Department lieutenants (Sean Whent, Chris Shannon, and Donna Hoppenhauer), and the former manager and the Principal Employee Analyst of the Oakland Equal Opportunities Program (Donald Jeffries and Jo Anne Sommerville, respectively). SAC, ECF No. 38, ¶¶ 8-18. He brought federal claims for violations of 42 U.S.C. § 1981 (for retaliation and a hostile work environment) and his Fourteenth Amendment right to due process. *Id.*, ¶¶ 176-86. He also brought state law claims for violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Govt Code §§ 12900-12996 (for

UNITED STATES DISTRICT COURT
For the Northern District of California

1 harassment, failure to prevent discrimination, and retaliation) and of California Labor Code § 1102.5

2 (for retaliation).  *Id.*, ¶¶ 187-94.

3      For background purposes, the court summarizes at a high level the factual allegations in Officer

4 Morrow's Second Amended Complaint as follows:

5 •     The City's investigation of the complaint at issue in *Castaneda* was flawed, and its result—a

6 finding that Ms. Castaneda's allegations were "not sustained"—"unnecessarily impugned guilt

7 upon [Officer Morrow] and lent credibility to her false allegation[s]."  In addition, the City

8 "conspired" with others "to prevent [Officer Morrow] from exercising his contractual, as well as

9 state and federally protected rights to receive an impartial administrative due process name[-]

10 clearing hearing."  *See id.*, ¶¶ 23-50.

11 •     Judge Patel forced Officer Morrow to settle *Morrow I* and illegally used her position to

12 coerce the City into approving the settlement.  *See id.*, ¶¶ 51-90.

13 •     In *Morrow III*, the City Attorney's Office, in violation of the Ninth Circuit's order upholding

14 Judge Patel's order dismissing *Morrow II*, sought to recover its attorneys' fees and costs to

15 retaliate against him because of his engagement in protected activities and his reports of

16 corruption, fraud, waste, and abuse.  *See id.*, ¶¶ 107-110.

17 •     After returning to work after a medical leave due to stress caused by the City's acts of racial

18 discrimination and retaliation, the City did not provide him with a reasonable accommodation in

19 retaliation for his previous complaints and placed him under the supervision of defendants from

20 his previous lawsuits.  On January 27, 2006, Officer Morrow filed a complaint with "FEHA"

21 "alleging [that the] [C]ity was retaliating against him by not participating in the interactive

22 process due to [his] engagement[] in protected EEO participation."  *See id.*, ¶¶ 91-106.

23 •     The City failed to honor its commitments under the April 20, 2004 Settlement Agreement by,

24 among other things, failing "to provide [him] with the $5,000.00 payment [he] was entitled to

25 receive" under the Agreement.  *See id.*, ¶¶ 111-15.

26 •     Officer Morrow filed another complaint with "FEHA" on November 24, 2006.  The

27 complaint "concern[ed] Captain Ben Fairow's deliberate disregard of [his] physician's

28 recommended accommodation" and repeated placement of him "under the direct supervision of"

1    named defendants in *Morrow I*, despite alternative placements being available.  On April 30,

2    2007, "FEHA" notified him that it was filing a charge on his behalf.  *See id.*, ¶¶ 116-20.

3    •      In August 2007, in retaliation for his previous complaints and legal actions, Deputy Chief

4    Israel rescinded a transfer list and denied him a transfer to the Criminal Investigative Division

5    ("CID") of the Oakland Police Department, despite his seeking a transfer since 2002.  After

6    rescinding the list, Deputy Chief Israel nevertheless "approved and effectuated the CID transfer

7    of a white male [(Officer John Koster)] who had never been on the department's transfer list."

8    Thereafter, in November 2007, Officer Morrow filed a grievance with the Oakland Police

9    Department and a complaint with "EEOC" concerning the transfer.  According to Officer

10    Morrow, the "EEOC filed discrimination and retaliation charges" against the City.  *See id.*, ¶¶

11    121-31.

12    •      On January 30, 2008, the Oakland Police Department's Internal Affairs Department notified

13    Officer Morrow that it would investigate all of his discrimination complaints.  The assigned

14    investigators (Mr. Whent, Mr. Shannon, and Ms. Hoppenhauer), however, lacked training and

15    failed to properly investigate the complaints, and had conflicts of interest.  As a result, on April

16    25, 2008, Officer Morrow filed a grievance alleging that the investigation of his discrimination

17    complaints was itself being conducted in a racially discriminatory way.  His grievance was

18    denied as untimely.  Officer Morrow alleges that Defendants failed to investigate his grievance

19    as required, failed to participate in mediation to resolve the complaints, and participated in a

20    conspiracy to deny his civil rights and prevent meaningful investigation of his complaints.  *See*

21    *id.*, ¶¶ 132-56.

22    •      On multiple occasions in 2009 (February 2, 2009, March 9, 2009, March 16, 2009, and

23    October 26, 2009), as a result of the failure of his April 25, 2008 grievance to be reviewed,

24    Officer Morrow sent a "five volume complaint" regarding his treatment to the Citizen Police

25    Review Board ("CPRB"), the Oakland Police Department's Internal Affairs Department, and

26    successive Chiefs of the Oakland Police Department (Chief Tucker, Chief Jordan, and Chief

27    Batts), but four of them (the CPRB, the Oakland Police Department's Internal Affairs

28    Department, Chief Tucker, and Chief Jordan) either stated that they would not investigate or

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

failed to respond.  Chief Batts, however, apparently "determined" that two of the complaints against Officer Morrow were "manufactured" and "unfounded."  Nevertheless, Chief Batts failed to investigate Mr. Morrow's complaints, and, as a result, on June 28, 2010, Officer Morrow filed a complaint with the "EEOC."  He received a right-to-sue letter from "EEOC" on February 14, 2011.  *See id.*, ¶¶ 157-62, 168-73.

• On July 6, 2009, Lieutenant Whent "expanded and manufactured false allegations in a frivolous 'alleged' citizen complaint against [Officer Morrow] in order to retaliate against [him] for making racial discrimination and retaliation charges against [Lieutenant Whent] several months prior."  Thereafter, on September 9, 2009, the City Attorney's Office "initiated" a complaint with the Internal Affairs Department related to a claim for damages to an apartment door that was damaged when Officer Morrow and five other officers executed a search.  *See id.*, ¶¶ 163-67.

• "On February 8, 2012, the California Fair Employment and Housing Administration issued [Officer Morrow] a Right to Sue Notice for [the] City's failure to take all reasonable steps necessary to prevent discrimination and [C]ity's maintenance of a continuing hostile work environment."  *Id.*, ¶ 175.

On June 12, 2012, the court granted in part and denied in part Defendants' motion to dismiss Officer Morrow's Second Amended Complaint and significantly narrowed the scope of this action. *See* 6/12/2013 Order, ECF No. 60.  First, the court reiterated that, to the extent that Officer Morrow's claims in this action are based on allegations related to the City's investigation of the complaint at issue in *Castaneda* and the subsequent *Morrow I* and *Morrow II* actions in federal court and the *Morrow III* action in state court, they are barred by the doctrine of res judicata.  *Id.* at 8-12 (describing in detail why his claims are barred); *see also* 2/3/2013 Order, ECF No. 35 at 8-11 (dismissing these claims with prejudice).  Accordingly, the court made clear that Officer Morrow's claims were dismissed to the extent they accrued prior to January 10, 2006 (the date Officer Morrow filed *Morrow III*).  6/12/2013 Order, ECF No. 60 at 8; *see also* 2/3/2013 Order, ECF No. 35 at 11. Second, the court found that Officer Morrow sufficiently alleged a race discrimination or retaliation claim under 42 U.S.C. § 1981, but only against Deputy Chief Israel and only with respect to the

UNITED STATES DISTRICT COURT
For the Northern District of California

1    denial of his transfer request.  6/12/2013 Order, ECF No. 60 at 14-17.  The court otherwise found his

2    race discrimination, retaliation, and hostile work environment claims under § 1981 to be insufficient

3    and dismissed them with prejudice.  *Id.* at 14-18.  Third, the court dismissed with prejudice Officer

4    Morrow's Fourteenth Amendment claim, based on his "liberty interest to receive a policy compliant

5    IAD investigation with the substantive limitations imposed" by a negotiated settlement agreement

6    involving the City, because administrative policies and settlement agreements (such as the

7    negotiated settlement agreement he mentions), even if they did secure rights, do not suffice to allege

8    a violation of a constitutionally protected liberty or property interest.  *Id.* at 18-20.  Fourth, the court

9    dismissed with prejudice Officer Morrow's claim under California Government Code § 12940(j)

10   (which makes harassment illegal and requires an employer to take immediate and appropriate action

11   against it), but found that he sufficiently alleged a claim against the City under California

12   Government Code § 12940(k) (which requires an employer to take reasonable steps to prevent

13   discrimination and harassment) based on his transfer denial.  *Id.* at 20-24.  Fifth, the court dismissed

14   with prejudice Officer Morrow's retaliation claim against the individual defendants under California

15   Government Code § 12940(h), but allowed it to survive as against the City in the context of his

16   transfer denial.  *Id.* at 24-25.  Finally, the court dismissed without prejudice Officer Morrow's

17   retaliation claim against the City under California Labor Code § 1102.5, but he abandoned this claim

18   by failing to file a Third Amended Complaint.  *Id.* at 25-26; *see generally* Docket.[2]  In short, the

19   court dismissed all of Officer Morrow's claims except for these: (1) his claim under 42 U.S.C. §

20   1981 against Deputy Chief Israel for discrimination and retaliation in the context of his request to

21   transfer to CID; (2) his failure-to-prevent-discrimination claim under California Government Code §

22   12940(k) against the City in the context of his request to transfer to CID; and (3) his retaliation

23   claim against the City under California Government Code § 12940(h) in the context of his request to

24   transfer to CID.

25        The remaining Defendants (the City and Deputy Chief Israel) answered the Second Amended

26

27

28        [2] Defendants point this out in their motion, Summary Judgment Motion, ECF No. 185 at 9, and Mr. Morrow concedes in his opposition that he should not be able to proceed with his claim under California Labor Code § 1102.5, Amended Opposition, ECF No. 192 at 23.

1    Complaint in light of the court's June 12, 2012 order.  Answer, ECF No. 71.

2        Thereafter, the court held an Initial Case Management Conference on September 13, 2012 to set

3    deadlines for the case and to help manage the parties' early document discovery.  9/13/2012 Minute

4    Order, ECF No. 75; 9/17/2012 Order, ECF No. 76.  The court gave the parties roughly 10 months to

5    complete fact discovery.  9/17/2012 Order, ECF No. 76 at 2.  In the early months of discovery, the

6    parties had difficulty working together, so the court worked with the parties to resolve their disputes

7    during Further Case Management Conferences on October 24, 2012 and November 26, 2012.

8    10/24/2012 Minute Order, ECF No. 91; 11/26/2012 Minute Order, ECF No. 111.  After the

9    November 26, 2012 Further Case Management Conference, the court issued a ruling detailing the

10   parties' specific discovery obligations in light of the narrowed scope of the case and memorializing

11   the process for producing the discovery that the court worked out with the parties at the conference.

12   11/28/2012 Order, ECF No. 113 at 1-3.  From this point forward, the parties did not ask the court to

13   resolve any further discovery disputes.  *See generally* Docket.[3]

14       At the November 26, 2012 Further Case Management Conference, Defendants also notified the

15   court that they planned on filing a motion for summary judgment.  In an attempt to deal with

16   problems before they started, the court's November 28, 2012 order also provided a specific process

17   by which the parties were to draft a joint statement of undisputed facts in relation to Defendants'

18   anticipated summary judgment motion.  11/28/2012 Order, ECF No. 113  at 4.  Despite the court's

19   efforts, the parties still had much difficulty working together to draft and agree on one.  *See* ECF

20   Nos. 130, 133, 138, 146, 147, 150, 153, 155, 159, 167 (numerous iterations of Officer Morrow's

21   proposed joint statement of undisputed facts and letters between counsel arguing about them).

22   Defendants even filed a motion for leave to file separate statements of undisputed facts.  Defendants'

23   Administrative Motion, ECF No. 134.  The court denied this motion and required the parties to keep

24   trying, but the court also provided some specific guidance to them.  3/6/2013 Order, ECF No. 144.

25

26   _____

27       [3] Like nearly all of the magistrate judges in the Northern District of California, the
     undersigned employs a joint letter process for dealing with discovery disputes.  This process is
     outlined in the undersigned's standing order.  In this particular action, after November 26, 2012 the
28   court received no joint letters from the parties asking for the court's assistance in resolving a
     discovery dispute.

The court explained:

> [A]lthough the court hopes the parties can include as many relevant, undisputed facts as possible in their joint statement as possible, the joint statement does not need to contain every fact that the parties wish to bring to the court's attention.  In other words, just because a fact is not included in the joint statement does not mean that the court cannot consider it.  For example, it appears from some of Mr. Morrow's comments that he is worried that the court will not be able to consider the provisions of the City of Oakland's administrative policies or the consent decree filed in *Allen v. City of Oakland*, No. C00-04599 TEH, so he attempts to include them in his proposed joint statement.  He need not do so.  The court is not limited to only those facts that are contained in the parties' joint statement of undisputed facts.  When he files either his motion for summary judgment or his opposition to Defendants' motion for summary judgment, he may set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e).  To the extent that Defendants contend that any of Mr. Morrow's facts are not relevant or supported by admissible evidence, they may argue that on summary judgment.

*Id.* at 3-4.  By September and October 2013, the parties told the court that they had made significant progress on the joint statement of undisputed facts and that Defendants planned on filing their summary judgment motion by October 11, 2013.  *See* 9/6/2013 Order, ECF No. 163; 10/4/2013 Order, ECF No. 165.

Defendants filed their summary judgment motion, and several declarations in support of it, on October 10, 2013.  Original Summary Judgment Motion, ECF No. 169; Wilson Declaration, ECF No. 171; Belue Declaration, ECF No. 172; Israel Declaration, ECF No. 173; Koster Declaration, ECF No. 174; Kozicki Declaration, ECF No. 175; Hookfin Declaration, ECF No. 176; Hoppenhauer Declaration, ECF No. 177.  They also filed a Joint Statement of Undisputed Facts.  JSUF, ECF No. 170.  The Joint Statement of Undisputed Facts that Defendants filed contained 20 so-called undisputed facts, even though Officer Morrow objected to 14 of them.  *See id.*  In reality, only 6 of the facts listed are undisputed.  *See id.*  Defendants' motion cited to these "undisputed facts."  *See* Original Summary Judgment Motion, ECF No. 169.

The court held another Further Case Management Conference on October 17, 2013.  10/17/2013 Minute Order, ECF No. 184.  At it, the court talked with the parties about the time line for Defendants to file an amended summary judgment motion (one that cites to underlying evidence rather than "undisputed facts" that actually are disputed) and about the briefing schedule for the motion in light of Officer Morrow's recent back surgery.  *See* 10/18/2013 Order, ECF No. 182.  The court and the parties agreed that Defendants would file an amended motion by November 1, 2013,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   and the court set briefing deadlines to accommodate the parties' schedules and set a hearing on the

2   motion for December 19, 2013.  *Id.* at 2.  The next day, the court issued to Officer Morrow, who

3   holds a law degree[4] and is representing himself, a notice that attached the District's *Handbook for*

4   *Litigants Without a Lawyer*, explained to him how he could seek assistance with his case from the

5   Legal Help Center located in the Federal Courthouse in San Francisco, and informed him of the legal

6   standards (including evidentiary ones) relating to motions for summary judgment.  Pro Se Litigant

7   Notice, ECF No. 183.

8       The parties complied with the summary judgment briefing schedule.  Defendants filed their

9   amended summary judgment motion on November 1, 2013.  Amended Summary Judgment Motion,

10  ECF No. 185.  Officer Morrow filed his opposition, and an 85-page separate statement of "facts" and

11  86 exhibits in support or it, on November 27, 2013.  Opposition, ECF No. 188; Separate Facts, ECF

12  No. 187; Exhibits, ECF No. 189.  Defendants filed their reply on December 5, 2013.  Reply, ECF

13  No. 190.  On December 9, 2013, Officer Morrow filed an amended opposition and an amended

14  separate statement of facts (totaling 105 pages).  Amended Opposition, ECF No. 192; Amended

15  Separate Facts, ECF No. 191.  These amended documents, however, merely added tables of contents

16  and did not contain substantive changes.

17      The court held a hearing on Defendants' motion on December 19, 2013.  12/19/2013 Minute

18  Order, ECF No. 198.

19  **II. FACTS RELEVANT TO THE INSTANT SUMMARY JUDGMENT MOTION**

20      Because the court, in its June 12, 2012 Order, limited this action to Officer Morrow's allegations

21  relating to his failure to be transferred to CID in 2007, the facts that are relevant to Defendants'

22  motion, and for which there is admissible evidence, are as follows.

23      On March 27, 2002, Officer Koster filed a request to be transferred from "patrol" to the "Reserve

24  Detail" unit of the "Spec. Ops" section of the "S.O.D." division of the Oakland Police Department.

25  Belue Declaration, Ex. 1, ECF No. 172-1 at 2; Koster Declaration, ECF No. 174, ¶ 1.  The "S.O.D."

26  division is associated with the number "105610."  Belue Declaration, Ex. 1, ECF No. 172-1 at 2.  A

27

28      [4] Officer Morrow previously informed the court of this fact at earlier case management
    conferences.

C 11-02351 LB
ORDER                                    10

few days later, on April 2, 2002, Officer Morrow filed a request to be transferred to CID.  JSUF No. 2, ECF No. 170 at 2.  A little over two years later, on June 15, 2004, Officer Koster filed a request to be transferred from "CRT II" to "Spec. Victims Unit" division.  Belue Declaration, Ex. 2, ECF No. 172-2 at 2.  The "Spec. Victims Unit" division is associated with the number "102310."  *Id.*  It is unclear from the record whether Officer Koster received either or both of his requested transfers.  Officer Morrow was not transferred until January 2008.  Hookfin Declaration, ECF No. 176, ¶ 4; Hoppenhauer Declaration, ECF No. 177, ¶ 9.

Sometime in January 2007, Officer Koster "was offered a transfer" to CID.  Koster Declaration, ECF No. 174, ¶ 2; *see also* Kozicki Declaration, ECF No. 175, ¶ 2.  Officer Koster's supervisor at the time, Captain Kozicki, however, blocked the transfer because "of issues he had" with Officer Koster's performance.  Kozicki Declaration, ECF No. 175, ¶¶ 1-2; *see also* Koster Declaration, ECF No. 174, ¶ 2.  Captain Kozicki provided Officer Koster with a "corrective action plan."  Kozicki Declaration, ECF No. 175, ¶ 2.  After completing the corrective action plan, Officer Koster was to be placed back on the transfer list and receive the next available transfer to CID.  Koster Declaration, ECF No. 174, ¶ 2; Kozicki Declaration, ECF No. 175, ¶ 3.  Officer Koster completed the corrective action plan in the spring of 2007, and Captain Loman confirmed to Officer Koster that he would receive a transfer to CID at the next available opening.  Koster Declaration, ECF No. 174, ¶ 3.

On July 14, 2007, Mr. Israel was assigned as Deputy Chief of the Bureau of Investigations and became a supervisor over CID.  Israel Declaration, ECF No. 173, ¶ 1.  He "actually assumed the duties of the position on August 13, 2007 after returning from vacation."  *Id.*  At the time he was assigned as Deputy Chief (on July 14, 2007), Captain Loman was responsible for recommending officers for transfer to CID.  *Id.*, ¶ 2.

In August 2007, Officer Morrow "was out on Disability."  JSUF No. 11, ECF No. 170 at 3.

On August 14, 2007, Officer Koster was told that his transfer to CID "had gone through" and that he would be transferred to CID on August 25, 2007, which he was.  JSUF No. 9, ECF No. 170 at 3; Koster Declaration, ECF No. 174, ¶ 4.

Officer Koster and Captain Kozicki both state that "[a]t no time prior to" Officer Koster's

1    transfer did they have "any communications with" Deputy Chief Israel "concerning" Officer

2    Koster's transfer, and Deputy Chief Israel does not recall "any discussion" about Officer Koster

3    prior to his transfer.  Israel Declaration, ECF No. 173, ¶ 4; Koster Declaration, ECF No. 174, ¶ 5;

4    Kozicki Declaration, ECF No. 175, ¶ 5.  Deputy Chief Israel also states that he does "not know what

5    documentation was completed or reviewed concerning Officer Koster's transfer to CID" because

6    "the selection process commenced and was completed before [he] assumed [his] supervisory

7    position."  Israel Declaration, ECF No. 173, ¶ 4.  More generally, Deputy Chief Israel states that

8    during his time as Deputy Chief, while he "would discuss proposed transfers with my commanders

9    to determine how transfers would affect the overall staffing in the department," he "was not involved

10   in the process of selecti[ng] . . the individual names to be placed on the list of persons recommended

11   for transfer."  Id., ¶ 3.  Instead, his role "was limited to soliciting Captain Loman's recommendations

12   and obtaining draft Personnel Transfer Orders which would then be forwarded by the Personnel

13   Division to the Chief for approval."  Id.  "It was not [his] practice to review the underlying transfer

14   lists or to question Captain Loman's recommendations."  Id.

15        On October 1, 2007, Officer Morrow "returned to duty."  JSUF No. 11, ECF No. 170 at 3.

16        On November 2, 2007, Officer Morrow filed a grievance alleging that he should have received a

17   transfer to CID instead of Officer Koster.  JSUF No. 12, ECF No. 170 at 3.  Lieutenant Hoppenhauer

18   thereafter conducted an investigation into Officer Morrow's claims that Deputy Chief Israel

19   "cancelled the transfer list and granted a transfer to CID" to Officer Koster and that Deputy Chief

20   Israel "took these actions to discriminate against him to discriminate against [him] because of [his]

21   race or in retaliation for [his] having previously filed a complaint against Deputy Chief Israel."

22   Hoppenhauer Declaration, ECF No. 177, ¶¶ 2-3.  Lieutenant Hoppenhauer "found no evidence that

23   the Transfer List was cancelled or that Deputy Chief Israel was ever involved in the selection of

24   Officer Koster to be transferred to CID in August 2007."  Id., ¶ 5.  She found instead that by August

25   13, 2007, Captain Loman "had already selected Officer Koster [for] transfer to CID on August 25,

26   2007."  Id., ¶ 8.

27        On November 15, 2007, Sergeant Hookfin issued a "Grievance Notification Supervisor

28   Response" rejecting Officer Morrow's grievance as being without merit and untimely.  Belue

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

Declaration, Ex. 5, ECF No. 172-5 at 2.  Among other things, Sergeant Hookfin stated that he "look[ed] into the matter" and had a "conversation with Captain Loman," who "confirmed that [Deputy Chief] Israel was not shown the list that was compiled by Captain Loman." *Id.*  "The open positions," Sergeant Hookfin wrote to Officer Morrow, "were for the intake desk and not for CID investigations.  As I understand, you wanted to be transferred to CID investigations, which was not available at the time; therefore the list was rescinded.  You were not passed over and you are currently eligible for the next round of transfers to CID." *Id.*

In January 2008, there was an opening in CID.  Israel Declaration, ECF No. 173, ¶ 5.  Captain Loman advised Deputy Chief Israel that Officer Morrow was eligible for transfer, and Deputy Chief Israel told Captain Loman to take him.  *Id.*  Deputy Chief Israel states that he had no reservations about Officer Morrow working in CID.  Thus, on January 12, 2008, Officer Morrow was transferred to CID.  Hookfin Declaration, ECF No. 176, ¶ 4; Hoppenhauer Declaration, ECF No. 177, ¶ 9.[5] Deputy Chief Israel states that "[a]t no time did I retaliate or racially discriminate against Officer Morrow because he filed complaints and lawsuits against me, or for any other reason."  Israel Declaration, ECF No. 173, ¶ 7.  Rather, he goes on, "[t]he only time I considered Officer Morrow for transfer, I approved the transfer." *Id.*

On April 9, 2008, Officer Morrow was informed by letter from Lieutenant Downing of the Internal Affairs Division of the Oakland Police Department that an investigation into Officer Morrow's allegations of race discrimination and retaliation was completed and found his allegations to be "unfounded."  Belue Declaration, Ex. 7, ECF No. 172-7.  On April 29, 2008, Officer Morrow acknowledged receipt of Lieutenant Downing's letter.  Belue Declaration, Ex. 8, ECF No. 172-8.

On February 8, 2012, over 4 years after Officer Koster was transferred to CID, and a few days after the court issued its February 2, 2012 order granting Defendants' motion to dismiss his First

---

[5] The court notes that, according to Paragraph 10 is the Belue Declaration, Exhibit 9 to that declaration is a "true and correct copy of the Personnel Order 3-08 page 14, that identifies and confirms Officer Morrow's transfer to CID on January 8, 2008."  Belue Declaration, ECF No. 172, ¶ 10.  The Exhibit 9 that Defendants filed, however, does not contain a "page 14" and none of the other pages show mention Officer Morrow.  *See id.*, Ex. 9, ECF No. 172-9 at 1-14 (containing pages numbered "1" through "13") & ECF No. 172-10 at 1-10 (containing pages numbered "15" through "23," and another page numbered "1").

1   Amended Complaint, Officer Morrow filed a complaint with California's Department of Fair

2   Employment and Housing ("DFEH") regarding, among other things, his claim that he was not

3   transferred to CID in 2007 because of race discrimination and retaliation.  Wilson Declaration, Ex.

4   1, ECF No. 171 at 4-20.

5                                             **ANALYSIS**

6   **I.  LEGAL STANDARD**

7        A motion for summary judgment should be granted if there is no genuine issue of material fact

8   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v.*

9   *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the

10  outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine if there

11  is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.* at 248-

12  49.

13       The party moving for summary judgment has the initial burden of informing the court of the

14  basis for the motion and identifying those portions of the pleadings depositions, answers to

15  interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

16  fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party

17  must either produce evidence negating an essential element of the nonmoving party's claim or

18  defense or show that the nonmoving party does not have enough evidence of an essential element to

19  carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

20  *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076

21  (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need

22  only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

23  (quoting *Celotex Corp.*, 477 U.S. at 325).

24       If the moving party meets its initial burden, the burden shifts to the non-moving party, which

25  must go beyond the pleadings and submit admissible evidence supporting its claims or defenses and

26  showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Nissan Fire*,

27  210 F.3d at 1103; *Devereaux*, 263 F.3d at 1076.  If the non-moving party does not produce evidence

28  to show a genuine issue of material fact, the moving party is entitled to summary judgment.  *See*

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

*Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. APPLICATION

### A. Most of the "Facts" and Documents that Officer Morrow Submitted in Support of His Opposition Are Irrelevant to the Narrowed Scope of this Action and/or Inadmissible as Evidence

At the outset, the court must address the separate statement of "facts" and 86 exhibits that Officer Morrow submitted in support of his opposition. *See* Exhibits, ECF No. 189; Amended Separate Facts, ECF No. 191. First, his statement of facts is a 105-pages unsworn document containing numerous factual allegations about the Oakland Police Department. They are allegations because they are made without a showing of personal knowledge and because they are not contained within or attached to a sworn declaration from a declarant competent to testify to all of them. Many of them contain hearsay and speculation. Second, the 86 exhibits purport to provide evidence for the facts listed in the separate statement, but the exhibits are not attached to a declaration or otherwise authenticated. For these reasons, Officer Morrow's separate statement of facts, and the exhibits that purport to support them, to the extent they do not duplicate those submitted by Defendants (which are authenticated and admissible) are inadmissible as evidence. Nevertheless, in its analysis below, where appropriate, the court addresses Officer Morrow's arguments as if the documents he cites in support are in fact authenticated. In other words, given Officer Morrow's *pro se* status, the court addresses his arguments on the merits when it can.

### B. Officer Morrow's Claim against Deputy Chief Israel for Discrimination and Retaliation in Violation of 42 U.S.C. § 1981 Fails

Defendants first ask the court to enter summary judgment in their favor with respect to Officer Morrow's claim against Deputy Chief Israel for race discrimination and retaliation in violation of 42 U.S.C. § 1981. Amended Summary Judgment Motion, ECF No. 185 at 2-6. Their main argument is that Officer Morrow cannot show that Deputy Chief Israel caused him to suffer an adverse

UNITED STATES DISTRICT COURT
For the Northern District of California

1   employment action or that Deputy Chief Israel intentionally discriminated or retaliated against him

2   because Deputy Chief Israel was not directly involved in the transfer decision and, in fact, Deputy

3   Chief Israel transferred him to CID at the first available opportunity. *Id.* at 5-6.[6]

4       "Section 1981 of the Civil Rights Act of 1866 provides that '[a]ll persons within the jurisdiction

5   of the United States shall have the same right in every State and Territory to make and enforce

6   contracts . . . as is enjoyed by white citizens.'" *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000,

7   1005-08 (9th Cir. 2011) (quoting 42 U.S.C. § 1981(a)).  It is well-established that analysis of a §

8   1981 employment discrimination claim follows the same legal principles as those applicable in a

9   Title VII discrimination case.  *See Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007).  The

10  Supreme Court has adopted a three-part burden shifting test for employment discrimination claims

11  that are based on a theory of disparate treatment.  *See McDonnell Douglas Corp. v. Green*, 411 U.S.

12  792 (1973).  The test has been applied to employment discrimination based on race.  *Moran v. Selig*,

13  447 F.3d 748, 753 (9th Cir. 2006).  First, the plaintiff has the initial burden under the statute of

14  establishing a *prima facie* case for discrimination.  Second, if the plaintiff establishes a *prima facie*

15  case, the burden of production shifts to the employer to articulate a "legitimate, nondiscriminatory

16

17  _____

18      [6] Defendants also argue that Officer Morrow cannot show that a similarly-situated person
    outside of his protected class was treated more favorably that he was.  Amended Summary Judgment
19  Motion at 5.  Specifically, citing Paragraph 6 of the Hoppenhauer Declaration and Exhibit 3 of the
    Belue Declaration, Defendants argue that even if Officer Koster had not been transferred to CID,
20  another officer, David Wong, would have been transferred to CID before Officer Morrow anyway.
    *Id.* at 4-5.  But the documents provided are not clear on this point.  While Lieutenant Hoppenhauer,
21  in Paragraph 6 of her declaration, does indeed state that Officer Wong was ahead of Officer Morrow
    on the CID transfer list, Hoppenhauer Declaration, ECF No. 177, ¶ 6, the actual transfer list (Exhibit
22  3 of the Belue Declaration) states that on June 5, 2000 Officer Wong submitted a request to transfer
    to an "Org & Dept" associated with the number "105210," Belue Declaration, Ex. 3, ECF No. 172-3
23  at 3.  Officer Morrow, on the other hand, submitted a request to transfer to an "Org & Dept"
    associated with the number "106210."  Belue Declaration, Ex. 3, ECF No. 172-3 at 3.  There is no
24  evidence in the record explaining these numbers, nor is there evidence showing that only one of the
    two officers (Officers Wong and Morrow) could have transferred to CID.  Lieutenant Hoppenhauer
25  states that "pursuant to department protocol," Officer Morrow would not have been selected for
    transfer, but these "department protocol[s]" are not in the evidentiary record before the court.  In
26  light of the lack of explanation about the department numbers and the failure to provide the
    protocols governing department transfers, the court finds Defendants' argument insufficient and
27  unpersuasive.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  reason" for the employment decision.  Third, if the employer offers a nondiscriminatory reason, the

2  burden returns to the plaintiff to show that the articulated reason is a "pretext" for discrimination.

3  *McDonnell*, 411 U.S. at 802–04.

4      To establish his initial *prima facie* case of race discrimination, Officer Morrow must show that:

5  (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an

6  adverse employment action; and (4) similarly situated individuals outside his protected class were

7  treated more favorably, or other circumstances surrounding the adverse employment action give rise

8  to an inference of discrimination.  *See*, *e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

9  (1973); *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  "As to

10  the third element, an adverse employment action is one that 'materially affect[s] the compensation,

11  terms, conditions, or privileges of . . . employment.'"  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089

12  (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)).  And

13  "[t]o make out a *prima facie* case of retaliation, [a plaintiff] must establish that he [(1)] undertook a

14  protected activity . . . , [(2)] his employer subjected him to an adverse employment action, and [(3)]

15  there is a causal link between those two events."  *Vasquez v. County of Los Angeles*, 349 F.3d 634,

16  646 (9th Cir. 2003) (citation omitted).  Finally, with respect to either a race discrimination or

17  retaliation claim, "a plaintiff must prove that the defendant acted against him with discriminatory

18  intent."  *Stones v. Los Angeles Cmty. College Dist.*, 796 F.2d 270, 272 (9th Cir. 1986) (citing

19  *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("§ 1981, like

20  the Equal Protection Clause, can be violated only by purposeful discrimination")).

21      As described above, in its June 12, 2012 Order, the court found that Officer Morrow had

22  sufficiently *alleged* a plausible claim for relief against Deputy Chief Israel for race discrimination

23  and retaliation under 42 U.S.C. § 1981.  6/12/2012 Order, ECF No. 60 at 15-17.  This was because,

24  for his race discrimination claim, he *alleged* that he is a member of a protected class (African-

25  American), that he was qualified for the position (he was on the original list of potential transferees),

26  that he suffered an adverse employment action (the transfer list was rescinded and he was not

27  selected for transfer), and that a similarly situated individual outside his protected class was treated

28  more favorably or other circumstances surrounding the adverse employment action give rise to an

UNITED STATES DISTRICT COURT
For the Northern District of California

inference of discrimination (Officer Koster, a Caucasian male officer, who had not been on the transfer list, was transferred instead). *See* SAC, ECF No. 38, ¶¶ 121-28. And for his retaliation claim, he *alleged* that he engaged in a protected activity (made discrimination complaints and filed lawsuits), suffered an adverse employment action (the transfer denial), and that a causal link between the two events (Deputy Chief Israel was a named defendant in *Morrow I*). *Id.*, ¶¶ 127-28. Officer Morrow also *alleged* that Deputy Chief Israel, in rescinding the transfer list and transferring Officer Koster to CID instead of Officer Morrow, acted with discriminatory and retaliatory intent. *Id.*, ¶ 127, 129.

At the motion to dismiss stage, Officer Morrow's *allegations* were good enough for his claims to survive. But at the summary judgment stage, Officer Morrow must show, with admissible *evidence*, that the required elements are met. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Nissan Fire*, 210 F.3d at 1103; *Devereaux*, 263 F.3d at 1076; *see also* Pro Se Litigant Notice, ECF No. 183. He has not. First, Defendants have submitted evidence showing that Deputy Chief Israel had no involvement with Officer Koster's transfer to CID. They have submitted declarations stating that Officer Koster was offered a transfer to CID before Deputy Chief Israel was assigned to his position, that Deputy Chief Israel did not actually assume the duties of the position until August 13, 2007 after returning from vacation, that Captain Loman was responsible for recommending officers for transfer to CID at the time Officer Koster was offered the transfer, that neither Officer Koster nor Captain Kozicki communicated with Deputy Chief Israel concerning Officer Koster's transfer, and that Deputy Chief Israel does not recall any discussions about Officer Koster prior to his transfer or know what documentation was completed or reviewed concerning his transfer because the selection process was over before Deputy Chief Israel assumed his position. Second, Defendants also have produced declarations stating and documentary evidence showing not only that Deputy Chief Israel had no involvement with Officer Morrow not being transferred to CID in August 2007, but that, when first learning of Officer Morrow's eligibility, he supported Officer Morrow's transfer request. Lieutenant Hoppenhauer "found no evidence that the Transfer List was cancelled," and Deputy Chief Israel stated that when he first learned that a CID position was open and that Officer Morrow was eligible for it, Deputy Chief Israel recommended that Officer Morrow be transferred.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Officer Morrow has not submitted any admissible evidence challenging Defendants' evidence.

2    In his opposition, he argues that, under the applicable transfer policy, Deputy Chief Israel became

3    responsible for all transfer decisions concerning CID when he was assigned as Deputy Chief on July

4    14, 2007, *see* Amended Opposition, ECF No. 192 at 14-17, but the transfer policy is not in evidence,

5    and so the court has no way of knowing whether Officer Morrow's claim is true.[7]  But even if the

6    transfer policy was in evidence, it does not help him because his argument is that in July and August

7    2007 Deputy Chief Israel should have known about Officer Koster's and his transfer requests.

8    Section 1981, however, is not a negligence statute; to be liable for a violation, a plaintiff must prove

9    that the defendant acted against him with discriminatory or retaliatory *intent.  See Stones*, 796 F.2d

10   at 272.  Whether Deputy Chief Israel should have known about the transfer requests does not prove

11   his discriminatory or retaliatory intent, and without admissible evidence Officer Morrow cannot

12   show that there is a genuine issue of material fact.

13   Officer Morrow also argues that Officer Koster's transfer was in violation of the applicable

14   transfer policy and that this shows that Deputy Chief Israel discriminated and retaliated against him.

15   Amended Opposition, ECF No. 192 at 19-21 (citing *Kouvchinov v. Parametric Tech. Corp.*, 537

16   F.3d 62, 68 (1st Cir. 2008) ("We agree with the plaintiff that pretext can be demonstrated through a

17   showing that an employer has deviated inexplicably from one of its standard business practices.")).

18   But again, the transfer policy is not in evidence, *see Kouvchinov*, 537 F.3d at 68 ("The most obvious

19   flaw in the fabric of this argument is that the plaintiff has not produced any competent evidence

20   establishing that [defendant] had a standard policy or practice of hearing employees out before

21   discharging them."), but even if it was, it is too big of a leap to say that the failure to follow those

22   procedures when transferring Officer Koster means that *Deputy Chief Israel* intended to discriminate

23   or retaliate against Officer Morrow, especially when the evidence that actually is in the record

24   supports Defendants' argument that Deputy Chief Israel did not have anything to do with Officer

25

26         [7] Officer Morrow also argues that his failure to be transferred does, in fact, constitute an

27   adverse employment action.  *See* Amended Opposition, ECF No. 192 at 17-18.  But because the
     court rejected Defendants' argument that no adverse employment action occurred (because Officer

28   Wong purportedly was ahead of Officer Morrow on the CID transfer list), the court need not address
     Officer Morrow's argument on that point.

1    Koster's transfer.

2        In sum, Defendants have submitted admissible evidence to support their argument that Deputy

3    Chief Israel had nothing to do with Officer Koster's transfer or the failure to transfer Officer

4    Morrow in August 2007 and that Deputy Chief Israel supported Officer Morrow's transfer in

5    January 2008 when he first learned that Officer Morrow was eligible for transfer.  Officer Morrow,

6    on the other hand, has submitted no admissible evidence in support of his arguments, but his

7    arguments would fail even if the documents he submitted along with his opposition had been

8    authenticated and admissible as evidence.  On this record, the court finds that Officer Morrow has

9    not met his burden to establish a *prima facie* case of discrimination or retaliation by Deputy Chief

10   Israel because Officer Morrow has not established, as he must, that Deputy Chief Israel acted against

11   him with discriminatory or retaliatory intent.  *See Stones*, 796 F.2d at 272.  Accordingly, Officer

12   Morrow's race discrimination and retaliation claim against Deputy Chief Israel under 42 U.S.C. §

13   1981 fails.

14   **C.  Officer Morrow's Claims against the City for Failing to Prevent Discrimination in**

15       **Violation of California Government Code §§ 12940(k) and for Retaliation in Violation of**

16       **California Government Code § 12940(h) Fail**

17       Defendants argue that Officer Morrow's two remaining claims against the City—his failure-to-

18   prevent-discrimination claim under California Government Code § 12940(k) and his retaliation

19   claim under California Government Code § 12940(h)—fail as well.  Amended Summary Judgment

20   Motion, ECF No. 185 at 2, 6-8.  They argue that Officer Morrow's claims fail because, as they

21   showed with respect to his § 1981 claim, he has not shown that Defendants discriminated or

22   retaliated against him, *id.* at 2, and because he failed to exhaust his administrative remedies, *id.* at 6-

23   8.

24       California Government Code §§ 12940(k) and (h) are part of California's Fair Employment and

25   Housing Act.  Section 12940(k), requires an employer to take reasonable steps to prevent

26   discrimination and harassment.  The provision provides:

27           It is an unlawful employment practice, unless based upon a bona fide occupational
             qualification, or, except where based upon applicable security regulations established
28           by the United States or the State of California: . . . (k) For an employer, labor
             organization, employment agency, apprenticeship training program, or any training
             program leading to employment, to fail to take all reasonable steps necessary to
             prevent discrimination and harassment from occurring.

1

2   Cal. Gov't Code § 12940(j).  Section 12940(h) prohibits retaliation.  It provides:

3       It is an unlawful employment practice, unless based upon a bona fide occupational
        qualification, or, except when based upon applicable security regulations established
4       by the United States or the State of California: . . .  (h) For any employer, labor
        organization, employment agency, or person to discharge, expel, or otherwise
5       discriminate against any person because the person has opposed any practices
        forbidden under this part or because the person has filed a complaint, testified, or
6       assisted in any proceeding under this part.

7   Cal. Gov't Code § 12940(h).

8        Under FEHA, a plaintiff must exhaust the administrative remedy provided by the statute by

9   filing a complaint with California's Department of Fair Employment and Housing within one year of

10  the occurrence of the alleged conduct and must obtain from DFEH a notice of right to sue in order to

11  be entitled to file a civil action in court based on violations of the FEHA.  *See* Cal. Gov't Code §

12  12960(b) & (d); *id.* § 12965(b); *see also Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996)

13  (citing Cal. Gov't Code §§ 12960, 12965(b); *Martin v. Lockheed Missiles & Space Co.*, 29

14  Cal.App.4th 1718, 1724 (1994); *Rojo v. Kliger*, 52 Cal.3d 65, 88 (1990)).  "The timely filing of an

15  administrative complaint is a prerequisite to the bringing of a civil action for damages under the

16  FEHA." *Id.* (citing *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 349 (1993); *Denny v.*

17  *Universal City Studios, Inc.*, 10 Cal. App. 4th 1226, 1232 (1992)).

18       The court previously addressed Defendants' administrative exhaustion argument in its June 12,

19  2012 order.  *See* 6/12/2012 Order, ECF No. 21-22, 25.  At that time, Defendants pointed out that

20  Officer Morrow had not filed a complaint with DFEH regarding his transfer until February 8, 2012

21  and argued that this was untimely, but in light of Officer Morrow's tolling argument (and

22  Defendants failure to address it) that any delay in filing suit based on his FEHA complaints was

23  because he was voluntarily pursuing internal administrative remedies, the court found Officer

24  Morrow's allegations sufficient to get past a motion to dismiss.  *Id.*  The court noted, however, that

25  Defendants could make their argument again at summary judgment.  *Id.* at 22 n.7.

26       The court also rejected Officer Morrow's argument that he exhausted his administrative

27  remedies because he received multiple right-to-sue notices from the EEOC.  *Id.* at 21 (citing SAC,

28  ECF No. 38, ¶¶ 47, 173).  As the court explained, "[a]n EEOC right-to-sue letter does not satisfy the

    jurisdictional requirement of exhaustion of remedies as to FEHA claims." *Alberti v. City & County*

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *of San Francisco Sheriff's Dept.*, 32 F. Supp. 2d 1164, 1174 (N.D. Cal. 1998 (citing *Martin v.*

2    *Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994)).

3       In their motion, Defendants argue that Officer Morrow knew, at the very latest, by April 2008,

4    that he had a potential claim and that he had from that point one year to exhaust his administrative

5    remedies. Amended Summary Judgment Motion, ECF No. 8. April 2008 is when he acknowledged

6    receiving the letter from Lieutenant Downing in which the Internal Affairs Department determined

7    that his transfer allegations were "unfounded." But because Officer Morrow did not file a complaint

8    with DFEH until February 8, 2012, Defendants argue that his FEHA claims are barred. *Id.*

9       This time, the court agrees. In his opposition, Officer Morrow again argues that his filing of

10    complaints with the EEOC suffice, but this argument fails for the same reasons as it did at the

11    motion to dismiss stage. *See Alberti v. City & County of San Francisco Sheriff's Dept.*, 32 F. Supp.

12    2d 1164, 1174 (N.D. Cal. 1998 (citing *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th

13    1718, 1724 (1994)). Moreover, there are no EEOC complaints or right-to-sue letters properly in

14    evidence. Officer Morrow also again suggests that the period to file a complaint should be tolled

15    because Defendants "have acted in bad faith and intentionally delayed and denied [him] any

16    opportunity at obtaining administrative relief," but he provides no admissible evidence to support

17    this vague claim. The court allowed his tolling argument to get his claims past the motion to dismiss

18    stage last time because the court was considering his allegations regarding tolling, but this time the

19    court must have evidence to support tolling. Here, there is none.

20       Accordingly, because the court finds that Officer Morrow failed to exhaust his administrative

21    remedies by timely filing a complaint with DFEH regarding his transfer, Officer Morrow's claims

22    against the City under California Government Code §§ 12940(k) and (h) fail.

23                              **CONCLUSION**

24       Based on the foregoing, the court finds that Officer Morrow's claim against Deputy Chief Israel

25    under 42 U.S.C. § 1981 and his claims against the City under California Government Code §§

26    12940(k) and (h) all fail and **GRANTS** Defendants' motion for summary judgment.

27       This disposes of ECF No. 185.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**IT IS SO ORDERED.**

Dated: December 19, 2013

_____
LAUREL BEELER
United States Magistrate Judge